ROBERTS ET AL. *v.* FISHER.

[No. 28,922. Filed May 8, 1952. Rehearing denied June 9, 1952.]

668

*Albert H. Gavit,* of Gary, and *Allen P. Twyman,* of East Chicago, for appellants.

*Richard P. Tinkham* and *James H. Pankow,* both of Hammond, for appellee.

JASPER, J.—This is an appeal from a judgment establishing the will of Amy Jane Roberts, deceased, as destroyed, under §7-601, Burns' 1933.

Appellee filed his amended complaint, alleging that the last will of the deceased was lost or destroyed.

Appellants filed a demurrer, which was overruled. An answer in two paragraphs was then filed, the first under this court's Rule 1-3, and the second alleging that Amy Jane Roberts revoked her will during her lifetime. Trial was by the court, and special findings of fact and conclusions of law were rendered.

Appellants contend that the court erred in overruling the demurrer. The demurrer was on the ground (1) that the court had no jurisdiction of the subject matter and (2) that the amended complaint did not state facts sufficient to constitute a cause of action.

The statute providing for the establishment of a lost or destroyed will is as follows:

"No will of any testator shall be allowed to be proved and established as lost or destroyed unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been destroyed in the lifetime of the testator without his consent, or otherwise fraudulently disposed of; nor unless the provisions shall be clearly proved by two witnesses, or by a correct copy and the testimony of one witness."

Section 7-601, Burns' 1933.

Appellants contend that the appellee should have proceeded under §7-405, Burns' 1933, which is as follows:

"On the application to such circuit court of any person interested, the clerk thereof shall issue a citation to any person alleged to have the custody of any will, requiring such person to produce the same before such court at such time as the court shall deem reasonable, that the same may be duly proved. And any person having such will in his possession, who, without just cause, shall, after such citation, fail to produce such will, may be committed to the jail of the county by an order of the court, there to remain until he produces such will or shall be discharged by the further order of

the court, and shall, moreover, be liable to any person interested in such will for the damages occasioned by withholding the same."

Appellee, in his amended complaint, alleged, among other things, in substance, that the will had been properly executed by Amy Jane Roberts, deceased, and was in existence at the time of her death, and that it was lost or destroyed by appellants. Appellants rely on the case of *Kaster et al.* v. *Kaster et al.* (1876), 52 Ind. 531, maintaining that appellee should have alleged either that the will was lost or that is·was destroyed, and that it was not sufficient to allege that it was either lost or destroyed. However, in the *Kaster Case,* the complaint alleged that the will was concealed and suppressed or destroyed. The *Kaster Case* was properly decided. Since the allegation of concealment or suppression would have to be proved under §7-405, Burns' 1933, the allegation as to a will being lost would have to be proved under §7-601, Burns' 1933. Therefore, the allegations in the *Kaster Case* were in conflict, and were held to be insufficient because different statutory remedies are provided for each circumstance alleged. The *Kaster Case* is distinguishable from the case at bar. The trial court had jurisdiction, the facts as alleged in the amended complaint were sufficient to constitute a cause of action, and the demurrer was properly overruled.

Appellants next contend that Special Finding of Fact No. 7 was not supported by sufficient evidence and is therefore contrary to law. It reads as follows:

"That on or about November 23, 1944, the said Amy Jane Roberts expressed a desire to make a new will, and upon being advised that the event she made a new will, the will above described should be destroyed, the said Amy Jane Roberts

caused the ribbon copy of said will to be destroyed. That at the time the said Amy Jane Roberts had no intent to revoke said will except and unless, and upon the condition, that the same were replaced by the intended new will. That no new will was executed by the said Amy Jane Roberts."

The evidence reveals that on November 30, 1942, the attorney for Amy Jane Roberts drew her will, making one original or ribbon copy and two carbon copies, all of which were signed and witnessed. The original or ribbon copy and a carbon copy remained with the attorney and the other carbon copy was sent to Amy Jane Roberts. Appellee along with one Bewley and one Dahlson were beneficiaries under the will, Bewley also being a residuary beneficiary and the executor. Bewley was devised several parcels of real estate. Certain of the parcels devised to him by Amy Jane Roberts were later conveyed to him by the deceased. Thereafter, because of an estrangement, substantially all of the real estate was reconveyed by Bewley to Amy Jane Roberts. The testatrix struck the items out of the duplicate copy of her will, and also, in indelible pencil, crossed off her signature and the signatures of the witnesses. On November 21, 1944, Amy Jane Roberts called her attorney on the telephone and talked with him about making a new will; that in this conversation Amy Jane Roberts was told that, in the event she made a new will, she must not only cross off sections of the copy of the will she had, but must also destroy it; and that he (the attorney) "wouldn't be satisfied with crossing off the signature on the will, she should destroy it." In compliance with this conversation, the ribbon copy of the will was sent to Amy Jane Roberts with the following letter:

"November 21, 1944

"Miss Amy Jane Roberts,
"1412 Amy Avenue,
"Whiting, Indiana

Re: Last Will & Testament.

"Dear Miss Roberts:—

"Confirming our conversation of this morning, I am enclosing herewith as per your request, the last will and testament you executed at my office before Reverend Shaffer and myself. As I advised you at the house it is important that you make up your mind about the new will and destroy the enclosure at once.

"To my best recollections there was also a copy of the will prepared and retained by me at the office and you may depend upon me that it will be destroyed.

"With kindest regards, I am

"Sincerely yours
BB                                    "G. A. Brindley."

On November 23, 1944, the ribbon copy of the will was destroyed by Amy Jane Roberts at her home in the presence of her attorney. The testatrix's attorney did not destroy the duplicate copy of the will in his possession, nor did he write a new will for her. Amy Jane Roberts, on December 5, 1944, sent John Fisher to the office of her attorney to pick up his duplicate copy of the will, and on the same day she returned the copy to her attorney's office. Bewley testified that on November 30, 1942, at the time the testatrix executed her will, he saw the will at the attorney's office, and that he and Fisher were beneficiaries under the will. He further testified that the testatrix wanted him to have the property, and deeded the property to him, and said that her sister had enough property, and that she wanted some poor person to have it. Later, Bewley reconveyed

the property to Amy Jane Roberts. Still later, Bewley settled all of his interest in the estate of Amy Jane Roberts with the appellant. On the Christmas prior to Amy Jane Roberts' death, Bewley exchanged presents with her. On January 2, 1945, the date of the testatrix's death, appellant found the mutilated will in the house of the deceased; and the appellee testified that the sister told him it was lucky the will was found, as his name was in it. He further testified that he did not know the estate was opened or closed, and that he never saw the will after the sister took it; that the sister informed him he would get his property after the will was probated; that later she told him the will was not probated and he would not get any property. He further testified that he was in the attorney's office, for the testatrix, and that the attorney had the will of Amy Jane Roberts. The duplicate copy of the will kept by the attorney was destroyed. There was further testimony that the attorney had offered a settlement to the appellee.

The mutilated copy of the will found in the home of the testatrix, with devises and bequests stricken out, and the signatures of the testatrix and the witnesses stricken out, with an indelible pencil, was in such condition that it would of itself be presumptive of a revocation. But when the ribbon copy was destroyed in the presence of the testatrix's attorney, after the attorney had informed her he would destroy the duplicate will retained in his file, there can be no question of the revocation having been completed on November 23, 1944. The evidence does not indicate that at the time of the destruction of her will, the testatrix had made up her mind to execute a new will. The attorney's letter said: ". . . it is important that you make up your mind about the new will and destroy the en-

closure at once." The attorney also testified that he told her, in the event she made a new will, she should destroy the old one. From the time the testatrix destroyed her will until the date of her death forty days had elapsed and no new will had been made.

Special Finding of Fact No. 7, heretofore set out, presents a new question of law in this state. The finding is based upon the theory that there was a ▉ dependent relative revocation of the will. In other words, that the will of the deceased was revoked only upon condition that a new will was to replace the old, and that the old will was to be effective until a new will was executed. We must therefore decide whether, under our statutes, the State of Indiana recognizes the dependent relative revocation doctrine. The doctrine is that if a testator mutilates or destroys a will with a present intention of making a new one immediately and as a substitute, and the new will is not made, or, if made, fails of effect for any reason, it will be presumed that the testator preferred the old will to intestacy, and the old one will be admitted to probate in the absence of evidence overcoming the presumption.[1] 57 Am. Jur., Wills, §514, p. 356. The doctrine of dependent relative revocation is a rule of presumed intention rather than a substantive rule of law.

Section 7-201, Burns' 1933, provides as follows:

"No will, except a nuncupative will, shall affect any estate unless it be in writing, signed by the testator, or by some one in his presence with his consent, and attested and subscribed in his

---

[1] See *Schneider* v. *Harrington* (1947), 320 Mass. 723, 71 N. E. 2d 242, for rule in Massachusetts; and *In Re Macomber's Will* (1949), 274 App. Div. 724, 87 N. Y. S. 2d 308, for rule in New York.

presence by two [2] or more competent witnesses; and if the witnesses are competent at the time of attesting, their subsequent incompetency shall not prevent the probate thereof."

Section 7-301, Burns' 1933, provides as follows:

"No will in writing, nor any part thereof, except as in this act provided, shall be revoked, unless the testator, or some other person in his presence and by his direction, with intent to revoke, shall destroy or mutilate the same; or such testator shall execute other writing for that purpose, signed, subscribed and attested as required in the preceding section. And, if, after the making of any will, the testator shall execute a second, a revocation of the second shall not revive the first will, unless it shall appear by the terms of such revocation to have been his intent to revive it, or, unless, after such revocation, he shall duly republish the previous will."

No question is presented as to the intent to revive a will or republish a previous will. The last-cited section of the statute, which must be strictly construed, *Runkle* v. *Gates* (1858), 11 Ind. 95, provides that a will shall not be revoked unless the testator, or some other person in his presence and by his direction, *with intent to revoke*, shall destroy or mutilate the same. The destruction of a will without the intent to revoke would not work a revocation. The doctrine of dependent relative revocation is recognized under our statutes. Neither of the two last-cited statutes forecloses this doctrine. It should, however, be cautiously applied.

In the case at bar, the ribbon copy of the will was destroyed by the testatrix, and the duplicate copy found at her home was mutilated. The law is well settled that where a person executes several duplicate copies of a will, the destruction of one of

the duplicates by the testator, or some other person in his presence and by his direction, *with intent to revoke,* causes all of the duplicate copies to be revoked. 57 Am. Jur., Wills, §495, p. 345. To revoke a will in whole or in part, under §7-301, Burns' 1933, it is necessary that there be a concurrence of two things, (1) the intention to revoke and (2) the act manifesting the intention by physical destruction or mutilation. *Fletcher Trust Co.* v. *Morse* (1951), 230 Ind. 44, 101 N. E. 2d 658; *Woodfill et al.* v. *Patton et al.* (1881), 76 Ind. 575; *Tinsley* v. *Carwile* (1937), 212 Ind. 675, 10 N. E. 2d 597. The destruction of the ribbon copy and the mutilation of a duplicate copy by the testatrix destroyed the will, and makes it necessary to ascertain the intention of the testatrix in so doing—as to whether or not the will was revoked or whether it was revoked conditionally, bringing it within the doctrine of dependent relative revocation. The intention to revoke is a question of fact for the jury, or the trial court if there is no jury. Thompson, *Wills,* 3rd Ed., §155, p. 242. The physical act of destruction is itself equivocal, and may be deprived of all revoking efficacy by explainatory evidence, indicating the *animus revocandi* to be wanting.[2]

Under the facts in the case at bar, the testatrix, without question, destroyed her will with the intention to revoke it unconditionally. The act of making a new will immediately is not shown by the evidence, either direct, circumstantial, or by inference.[3] The evidence does not show that the destruction of the old will was dependent or a condition upon which the testatrix was making the revocation. This cannot be left to speculation, supposition, conjecture,

---

[2] See Jarman, *Wills,* Vol. 1, 6th Ed., p. 146.

[3] See Reinstatement of Wills Under Doctrine of Dependent Relative Revocation, 50 Yale Law Journal, p. 518.

or possibility. The revocation of the old will was not, under the facts, dependent or conditional upon the making of a new will. The mere intention to make a new will at some future time is not enough to prevent revocation, and does not bring in force the doctrine of dependent relative revocation. The condition that revocation of a will is based upon making a new will must be proved by substantial evidence of probative value. A revocation which is independent of an intent to make a new will is neither a conditional nor a dependent one, but must be construed as absolute. The doctrine does not apply where a testator deliberately and intentionally cancels his will with the intention of revoking it absolutely, although at the time he purposed to prepare and execute a new will; or where the will was destroyed with intent merely to execute another will some time in the future. Appellee failed to show a present intention to make a new will immediately.

The evidence, as heretofore set out, with all of the inferences most favorable to appellee, shows that the will of the testatrix was unconditionally revoked, although she had a future intent to make a new will. These two separate acts were not dependent on each other.

The special findings of fact were not sustained by sufficient evidence, and therefore are contrary to law.

Judgment reversed, with instructions to grant the motion for a new trial.

NOTE.—Reported in 105 N. E. 2d 595.