**In re the ESTATE OF Margery S. FOWLER, Deceased, John Bradshaw, Jr., Appellant–Petitioner,**

v.

**Lea Ellen PERRY, Appellee–Respondent.**

No. 10A01–9608–CV–268.

Court of Appeals of Indiana.

June 18, 1997.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, Daniel R. Marra Jeffersonville, for Appellant–Petitioner.

Joni L. Grayson, Vissing & Associates, L.L.P., Jeffersonville, for Appellee–Respondent.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

John Bradshaw, Jr. ("Bradshaw") appeals from the trial court's order that denied pro-

* We heard oral argument on May 1, 1997, at the Scott Circuit Court.

bate of a "duplicate original" of Margery S. Fowler's will. Lea Ellen Perry, Fowler's niece, contested probate of the duplicate will on the grounds that the original will was lost and presumed destroyed with an intent to revoke it. The trial court denied probate and ordered that Fowler's estate be administered intestate. The sole issue presented for our review is whether the trial court erred when it refused to admit the duplicate will to probate.

We affirm. *

### FACTS

Fowler executed a will on November 9, 1993, that left the residuary of her estate to John Bradshaw, Sr., or to his three children, if Bradshaw should predecease her. Bradshaw, Sr. did, in fact, predecease Fowler, and John Bradshaw, Jr. and his two siblings became the beneficiaries of Fowler's estate.

When Fowler executed her will, her attorney instructed her to execute both the original and an "original duplicate."[1] Fowler's attorney testified that it is his normal practice to tell clients that the duplicate is as valid as the original and that they should contact him if the original will has been lost, modified or revoked so that he will "know what to do" about the duplicate. Fowler took possession of the original will, and her attorney retained the duplicate in his office.

In 1994, Fowler's health began to deteriorate. She suffered a stroke in 1995 and was admitted to a nursing home. Fowler's neighbor, Glen Gregerson, was appointed temporary guardian of her person and estate. Fowler died on February 23, 1996, in the nursing home. The will that Fowler had executed in 1993 was never found. Lea Ellen Perry, Fowler's niece, was appointed administratrix of Fowler's estate. Subsequently, Bradshaw submitted a petition to probate the duplicate of Fowler's will that her attorney had retained. Perry objected to probate of the duplicate, and a hearing was held.

1. In this instance, the duplicate will consisted of a photocopy of the original will. The duplicate was independently executed at the same time and in the same manner as the original.

Gregerson testified at the hearing that, as Fowler's guardian, he had access to Fowler's home and to her safe deposit box and that he was joint owner of Fowler's bank accounts until his name was later removed. Gregerson also testified that Perry and her siblings did not have access to Fowler's residence.[2] Gregerson did not find the 1993 will among Fowler's possessions after her death, although he did find an earlier will.

The trial court denied probate of the duplicate original, stating that Fowler's will was presumed destroyed with an intent to revoke it and that Bradshaw had failed to overcome that presumption with evidence that the will had not been destroyed. Bradshaw now appeals from that judgment.

## DISCUSSION AND DECISION

Bradshaw contends that the trial court erred when it refused to probate the duplicate of Fowler's will. Specifically, he argues that the evidence is insufficient to show that Fowler intended to revoke her will. We cannot agree.

In Indiana, the general rule is that where a testator retains possession or control of a will and the will is not found at the testator's death, a presumption arises that the will was destroyed with the intent to revoke it. *Matter of Estate of Borom*, 562 N.E.2d 772, 775 (Ind.Ct.App.1990). The proponent of the will may rebut that presumption by introducing evidence which tends to support a contrary conclusion such that destruction with the intent to revoke is disproven by a preponderance of the evidence. *Id.* When a copy of the will is offered for probate, and probate of the copy is contested, the burden of proof remains on the contesting party throughout the proceeding to establish that the will was in fact revoked.

IND.CODE § 29-1-7-20. However, the contestor is aided by the presumption of destruction with the intent to revoke. *Matter of Estate of Borom*, 562 N.E.2d at 776. That presumption shifts the burden of going forward to the proponent of the will to present evidence to rebut the presumption. *Id.* Of course, the contestor still retains the ultimate burden of proof. *Id.*

Here, Bradshaw argues that the existence of an executed "duplicate original" of the lost will sufficiently rebuts the presumption that Fowler intended to revoke her will. However, our courts have attributed little significance to the fact that the lawyer retained a copy of the original will which was later lost or mutilated. *See Roberts v. Fisher*, 230 Ind. 667, 105 N.E.2d 595, 599 (1952); *Matter of Estate of Miller*, 172 Ind.App. 21, 359 N.E.2d 270, 273 (1977).

In *Matter of Estate of Miller*, the testator executed a will and two duplicates, one of which was retained by his attorney. *Matter of Estate of Miller*, 359 N.E.2d at 271. Six months after executing the will, the testator entered a nursing home and died soon thereafter. *Id.* The original will was never found, and the trial court admitted the attorney's copy to probate *Id.* We reversed and held that where an original will is either mutilated or lost with a presumed intent to revoke, all duplicates are presumed revoked as well. *Id.* at 273. The evidence in *Matter of Estate of Miller* showed that the testator had been in actual custody and control of the will prior to entering the nursing home and, therefore, had ample opportunity to destroy it. *Id.* Further, the will proponent failed to present any additional evidence to show that the testator did not intend to revoke his will.[3] *Id.*

---

**2.** Gregerson testified at the hearing that Fowler did not like the Bradshaws because they had borrowed money from her which they had refused to repay. Although no objection was made, that testimony is inadmissable hearsay. When a case is tried to the bench, we presume that the court ignored inadmissible evidence in reaching its judgment. *Shanks v. State*, 640 N.E.2d 734, 737 (Ind.Ct.App.1994). However, we note that the guardianship petition submitted by Gregerson shows that John Bradshaw's estate owed Fowler $15,000.00.

**3.** Evidence which would rebut the presumption might include evidence of the testator's intent at the time she allegedly revoked the will, evidence relating to the ability of the testator to obtain access to the will during the alleged period of revocation, evidence relating to the competency of the testator during the alleged period of revocation, and evidence relating to the ability of interested parties to obtain access to the will before its disappearance. *Matter of Estate of Borom*, 562 N.E.2d at 776.

As *Matter of Estate of Miller* indicates, the existence of a duplicate does not, in itself, rebut the presumption of revocation. Thus, it remains incumbent upon the will proponent to go forward with additional evidence that the will was not revoked. Like the testator in *Matter of Estate of Miller*, Fowler had access to her will for some 17 months, from its execution in November of 1993 until May of 1995, when she was admitted to a nursing home. Further, Gregerson testified that Perry and her siblings—Fowler's heirs—did not have access to Fowler's residence, possessions or safe deposit box. *See Cope v. Lynch*, 132 Ind. App. 673, 683–84, 176 N.E.2d 897, 902 (1961) (presumption can be rebutted with evidence that interested party had access to will and may have destroyed it).

As we have previously noted, it was Fowler's attorney's custom to instruct his clients that the duplicate and the original will are "equally valid." Thus, Bradshaw reasons that Fowler must have believed that either will could be probated and that, because she never informed her attorney of her intention to revoke, the presumption of revocation has been overcome. We cannot agree. Even assuming that Fowler's attorney gave her such an instruction, that does not establish that Fowler understood the instruction when it was given, that she remained aware of it, or that she was capable of acting upon it from the date she executed her will until the date of her death. The evidence shows that Fowler suffered a stroke and that in the eight months immediately prior to her death, she was hospitalized, confined to a nursing home, incapacitated, and subject to a guardianship.[4] *See* IND.CODE § 29–3–1–7.5. The evidence supports the conclusion that during that period Fowler would have been unable to notify her attorney of her intention to revoke her will.

The decedent's attorney described the copy in his possession as an "original duplicate," which he explained meant a photocopy of the original will executed in the same manner as the original. We recognize that the difference between a typed "ribbon copy" and a "carbon copy" has been eclipsed in an era in which laser printers can produce an unlimited supply of "original" documents. Notwithstanding advances in word processing technology, it is still the intent of the testator rather than the quality of the duplicate that controls.

The term "original duplicate" is an oxymoron which obscures the well-established distinction in our law between an original will and a copy. There can be only one "original" will, and the power to revoke a will remains with the testator even if his attorney may also have retained an executed copy. We acknowledge that Indiana attorneys often retain copies in their files of wills bearing original signatures and that it is not uncommon for such copies to be offered and admitted to probate when there is no objection. However, in those cases where the original will cannot be found and an objection to probate is raised, it is well settled that there is a presumption that the will was destroyed with an intent to revoke.

Bradshaw describes Fowler's "duplicate original" will as a precaution against the inadvertent loss of the original. That contention assumes that the will was lost rather than destroyed. However, when the original will cannot be located, it is not assumed to have been lost but presumed to have been destroyed with an intent to revoke. A duplicate will does not survive revocation of the original. As we stated in *Matter of Estate of Miller*:

It is also the general rule that when a mutilated ribbon copy of a will is found in the possession of the testator at his death,

4. Fowler's physician submitted the following letter in connection with the guardianship petition:

Ms. Fowler was admitted to the Clark Memorial Hospital on 5–6–95 for a severe right hemiparesis due to a cerebral vascular accident. She was very, very slow to respond but finally responded enough to be sent to the nursing home on 5–12–95. Currently, she is certainly not capable of managing her own affairs. It is doubtful that she will ever be able to manage her own affairs or be competent to do so. At the present time she will only nod and will not speak coherently at all. She certainly, at this time, would not be capable physically or even mentally of attending any hearing.

There is no evidence in the record that her condition ever improved.

or the ribbon copy is traced to testator's possession and cannot be found not only is the original copy revoked, *but all duplicates of the original are presumed revoked as well.*

*Matter of Estate of Miller,* 359 N.E.2d at 271. Thus, our law does not require that a testator take steps to revoke every duplicate of a will that may be in circulation, and the presence of a duplicate will in the file of Fowler's attorney does not overcome the presumption of revocation. We conclude that the trial court did not err when it denied probate of the contested duplicate will.

Affirmed.

ROBERTSON, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

In reaching its conclusion that the trial court properly denied probate of an original duplicate of Fowler's will, the majority relies on the rule that where a testator retains possession or control of a will and the will is not found at the testator's death, a presumption arises that the will was destroyed with the intent to revoke it. Because I believe that the application of this presumption in the instant case overrides the clear intent of the testator and is questionable when the testator executes a duplicate original, I respectfully dissent.

The paramount objective behind the law of wills in Indiana is to ascertain and give effect to the intent of the testator. *See, e.g., Matter of the Estate of Walters,* 519 N.E.2d 1270, 1272 (Ind.Ct.App.1988) ("The court should always endeavor, if possible, to discover the intent of the testator and give effect there-

to.") Here, the uncontroverted evidence reveals that Fowler executed two identical wills, keeping one for herself and leaving the other for safekeeping with her attorney, naming John Bradshaw and his children as her intended beneficiaries. The record also reveals that Fowler's attorney informed her that both wills were "equally valid" and that he informed all of his clients that they should contact him if they chose to revoke or modify their will so that he could take appropriate action with regard to the will in his possession. Finally, the evidence clearly indicates that Fowler was aware of this process, having contacted her attorney to modify her will on three or four other occasions, yet she never informed him of a desire to revoke her will or replace the Bradshaws with her nieces as the intended beneficiaries of the residuary of her estate.[5]

Nevertheless, the majority essentially concludes that the nieces should be the beneficiaries of Fowler's estate because Fowler's copy of the will could not be found at the time of her death, giving rise to a presumption of revocation. Other than the application of this presumption, however, nothing in the record supports the conclusion that Fowler desired to revoke her will.[6] In fact, the evidence in the present case clearly indicates that Fowler did not intend to revoke her will. By executing two original copies of the will, Fowler willingly established, and repeatedly employed, a procedure by which she could easily revoke or modify her will, while at the same time safeguarding it against inadvertent loss. Since Fowler did not utilize that process in the present case, I cannot conclude that she intended to revoke her will.

Furthermore, I question the continuing validity of the presumption that a lost original

---

**5.** The majority attempts to brush this fact aside by stating that Fowler could not notify her attorney of her intention to revoke in the present case because she was incapacitated by a stroke. The majority fails to realize, however, that since she was incapacitated, she similarly could not have revoked the will in her possession at that time. *See Barnes v. Bosstick,* 203 Ind. 299, 302, 179 N.E. 777, 778 (1932) (testator who became mentally incompetent not capable of revoking will).

**6.** The majority notes that Fowler's neighbor, Glen Gregerson, testified that Fowler did not like

the Bradshaws because they borrowed some money from her and refused to repay it. As the majority correctly notes, however, such testimony constitutes inadmissible hearsay. More important, I fail to understand how the fact that the Bradshaws owed Fowler money would have necessarily motivated her to exclude them from her will. Since the Bradshaws were to receive the bulk of Fowler's estate, any money that they owed her most likely would have returned to them.

demonstrates the testator's intent to revoke a will, especially when another executed original exists.[7] The rule relied on by the majority was first enunciated more than 100 years ago when there was a clear distinction between an executed original "ribbon copy" and a duplicate "carbon" copy. Today, as the majority notes, technology has made the production of duplicates common place and makes it difficult and, in some cases, impossible to discern which is the actual "original." Additionally, the execution of an identical original will enables an individual to establish a safeguard against the inadvertent loss of the other copy. Given the fact that Fowler executed both documents and had ample opportunity to announce her intention to revoke prior to her incapacitation, I cannot conclude that the fact that one of the documents was not found indicates that she desired to change her intended beneficiaries.[8] By applying the presumption in the present case to deny probate of an independently executed, duplicate original, we fail to fulfill our duty to "endeavor ... to discover the intent of the testator and give effect thereto." Under these circumstances, I would reverse the decision of the trial court and hold that Fowler's will is valid.

7. The presumption relied on by the majority does not distinguish between lost and mutilated wills. *See McDonald v. McDonald*, 142 Ind. 55, 82, 41 N.E. 336, 345 (1895) (presumption arises when will not found after death or if will is found in a defaced or mutilated condition). Clearly, the presumption should apply in the second circumstance, i.e., when the testator mutilates the will in her possession, it should work as a revocation of the other executed will. However, where the will in the testator's possession simply cannot be found and there is no evidence indicating that the testator desired to revoke her will, as here, application of the presumption tends to defeat the testator's intent. This is particularly true when the testator was incapacitated and institutionalized for a long period of time before her death, allowing other interested parties ample opportunity to gain access to her copy of the will.

8. I also note that several other jurisdictions have concluded that the existence of an executed, duplicate will overcomes or substantially weakens the presumption of revocation. *See, e.g., Stiles v. Brown*, 380 So.2d 792, 796 (Ala.1980) (presumption of revocation overcome by evidence that lawyer informed testator that executed duplicate must be destroyed to revoke, that testator never attempted to destroy duplicate and will contestant had access to will); *Payne v. Payne*, 229 Ga. 822, 194 S.E.2d 458, 461–62 (1972) (will stating that it had been executed as a duplicate "lest the original became misplaced" overcame presumption that original had been destroyed with intent to revoke); *Matter of the Estate of Shaw*, 572 P.2d 229, 231–32 (Okla.1977) (presenting executed copy of will for probate overcomes presumption of revocation arising from loss or failure to find testator's copy).