In re the ESTATE OF
Patrick J. OLIVA

Debra Oliva–Foster and Patrick
A. Oliva, Appellants,

v.

Judith A. Oliva as Personal Representa-
tive of The Estate of Patrick J. Oliva,
and Judith A. Oliva, as an Individual
Beneficiary, Appellee.

No. 71A04–0708–CV–437.

Court of Appeals of Indiana.

Feb. 22, 2008.

M. Patricia Hackett, Hackett & Associ-
ates, P.C., South Bend, IN, Attorney for
Appellee.

James A. Masters, Nemeth Feeney &
Masters, P.C., South Bend, IN, Attorney
for Appellants.

## OPINION

BARNES, Judge.

### Case Summary

Debra Oliva–Foster and Patrick Oliva,
Jr., ("the children") appeal the trial court's
denial of their motion for summary judg-
ment and grant of Judith Oliva's motion
for summary judgment. We affirm.

### Issue

The children present several issues,
which we consolidate and restate as wheth-
er the trial court in granting summary
judgment properly applied the doctrine of
dependent relative revocation to revive
their father's 1995 will.

### Facts

Patrick Oliva executed a will in 1995 in
the office of his attorney, Mario Zappia.
The 1995 will named Judith Oliva, his
spouse, as the primary beneficiary. Judith
is not the children's mother. He named
his daughter Debra, Patrick Jr.'s two chil-
dren, and Judith's daughter Cheryl as con-
tingent beneficiaries. Patrick left his son,
Patrick, Jr., out of the 1995 will.

Patrick executed a new will on March
13, 2002, again in the office of Attorney
Zappia. The 2002 will again named Judith
as the primary beneficiary. This will,
however, included Patrick, Jr., as a contin-
gent beneficiary along with Debra and
Cheryl. When he returned home from the
attorney's office, Patrick instructed Judith
to tear up his 1995 will. She tore it up in
Patrick's presence. Patrick explained that
this way "Pat, Jr. will not know that he
was ever taken out of the will." App. p.
144. Under the 2002 will, the children
would inherit from their father only if
Judith did not survive him.

Patrick passed away on March 16, 2003. The 2002 will was admitted to probate on April 29, 2003. The children filed a will contest on July 23, 2003. They contended the 2002 will was improperly executed and invalid. Specifically, the children alleged that the witnesses did not sign the will in the presence of each other and of the decedent.[1]

During the course of litigation, Attorney Zappia recovered an electronic copy of the 1995 will. Following this discovery, Judith and the children entered cross motions for summary judgment. The children argued that the 2002 will was invalid, the 1995 will was revoked and could not be revived, and the estate should pass by intestate succession. Indiana's intestacy laws would divide the estate between Judith and the children.[2] Judith argued that even if the 2002 will were invalid, the 1995 will would be revived by the doctrine of dependent relative revocation, and the estate would still pass to her.

The trial court granted Judith's motion for summary judgment and denied the children's. The trial court concluded: "There is no issue for trial because Testator intended that his 1995 will would have legal effect in the event that his 2002 will was invalid." App. p. 9. In so finding, the trial court avoided determining the validity of the 2002 will that was the subject of the initial will contest. Instead, the trial court determined an ultimate issue of law— whether the doctrine of dependent relative revocation would apply. The trial court applied the doctrine and concluded that no matter the outcome of the 2002 will contest, Judith would be the sole beneficiary of Patrick's estate. This appeal followed.

**1.** That allegation is vigorously contested by Judith.

**2.** *See* Ind.Code § 29–1–2–1(b), (c) (explaining that if the surviving spouse is a second spouse

## Analysis

The children contend that the trial court misapplied Indiana law in granting summary judgment in favor of Judith. A party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *McDonald v. Lattire*, 844 N.E.2d 206, 211 (Ind.Ct.App.2006). "The trial court's findings and conclusions are not binding upon this court, but do facilitate appellate review and offer insight into the trial court's rationale for its decision." *Id.* "[S]ummary judgment is inappropriate where the record reveals an incorrect application of law to the facts." *Reed v. Beachy Const. Corp.*, 781 N.E.2d 1145, 1148 (Ind.Ct.App.2002), *trans. denied.* The fact that the parties here filed cross-motions for summary judgment does not alter our review and each motion is to be considered separately. *Rhoades v. Heritage Invs., LLC*, 839 N.E.2d 788, 791 (Ind.Ct.App.2005), *trans. denied.*

■ Judith contends, and the trial court agreed, that in the event the 2002 will is invalid, the 1995 will would be revived by the doctrine of dependent relative revocation. Our supreme court recognized this doctrine in *Roberts v. Fisher*, 230 Ind. 667, 676, 105 N.E.2d 595, 598 (1952), and explained:

> [I]f a testator mutilates or destroys a will with a present intention of making a new one immediately and as a substitute, the new will is not made, or, if made, fails of effect for any reason, it will be presumed that the testator preferred the old will to intestacy, and the old one will be admitted to probate in

and decedent left surviving children by a previous spouse, then the surviving spouse shall only take one-half the net estate and a life estate in one-third of any land).

the absence of evidence overcoming the presumption.

In that case, on November 30, 1942, Amy Roberts's attorney drafted her will. Amy kept one copy and the attorney kept the original plus one copy. After an "estrangement" between Amy and certain beneficiaries of her will, she struck out items on the copy as well as her signature and the witnesses signatures. *Roberts,* 230 Ind. at 672, 105 N.E.2d at 597. On November 21, 1944, Amy called her attorney and discussed making a new will. During that conversation, her attorney advised that she should not only merely cross out parts of the old will, but that she should destroy it. That day he sent her a letter with the original will enclosed, instructing her to destroy it. *Id.* at 673, 105 N.E.2d at 598. Two days later the original was destroyed in the presence of her attorney.

Only forty days elapsed between the time Amy destroyed her will and her death. She did not make a new will during that time. At the time of her death, the copy of her will with stricken signature and paragraphs was found in her home. The trial court found this will could be revived by the doctrine of dependent relative revocation, but our supreme court disagreed. *Id.* at 677–78, 105 N.E.2d at 599.

Although it recognized the doctrine of dependent relative revocation, the supreme court concluded it did not apply to Amy's will because the mutilation of the copy was not done with a "present intention to make a new will immediately." *Id.,* 105 N.E.2d at 600. Without such intention, the court concluded the destruction amounted to an absolute revocation. *Id.* at 678, 105 N.E.2d at 600. Although our supreme court concluded that Indiana's probate statutes did not foreclose the doctrine, it warned that the doctrine should "be cau-

tiously applied." *Id.* at 676, 105 N.E.2d at 599.

We later recognized and commented on the doctrine. "The rule seeks to avoid intestacy where a will has once been duly executed and the acts of the testator in relation to its revocation seem conditional or equivocal." *In re Granger's Estate,* 124 Ind.App. 686, 693–94, 119 N.E.2d 437, 438 (1954). Since then, Indiana courts have not opined on the applicability of this doctrine.

■ The facts here reveal that Patrick only ordered the tearing up of his 1995 will after the creation and signing of his 2002 will. In fact, these events occurred immediately after returning home from his attorney's office. Patrick's act of instructing the 1995 will to be torn apart was clearly conditional on the creation and legitimacy of the new 2002 will. These facts indicate that Patrick destroyed the 1995 will because he intended the 2002 will to take its place. As such, we conclude that the doctrine of dependant relative revocation can be applied to revive the 1995 will. This result also avoids intestacy. "[T]he law does not favor and will avoid intestacy whenever possible." *Steele v. Chase,* 151 Ind.App. 600, 607, 281 N.E.2d 137, 140 (1972). It is especially relevant here where intestate succession would be contrary to Patrick's intentions as evident in both of his wills.

The children contend that the 2002 will was created before the 1995 will was torn apart, and thus the chain of events cannot qualify for an application of the dependent relative revocation doctrine. They point out that the testator did not destroy the 1995 will with a present intention to make a new one—rather the new will was already drafted and signed. On this point, Judith argued to the trial court that other states had utilized dependent relative revocation without a perfect timeline. The tri-

al court succinctly summarized the party's positions and stated: "simply by destroying the will on the way home from the lawyer as opposed to destroying it before you go to the lawyer's, those two cases should be treated differently?" Tr. p. 10. We think not. Patrick was free to destroy his prior 1995 will because a new will was in place and he depended on that will to be probated. The children also contend that Patrick's destruction of the 1995 will amounted to an absolute revocation and it cannot be revived. We disagree. Considering that Patrick only ordered that will to be torn up after completing his new will, it is clear this destruction was conditioned on the ability to probate his estate under the new will.

Finally, it is important to note that probate of the 1995 will will result in the same outcome as the 2002 will—Judith is the sole beneficiary of Patrick's estate. It is on this narrow set of facts that we conclude the dependent relative revocation doctrine is applicable here.

### Conclusion

The trial court did not err by granting summary judgment in favor of Judith. By correctly applying the doctrine of dependent relative revocation, the trial court concluded that even if the 2002 will would be found invalid, the 1995 will would be revived and create the same result. As such, there were no issues of material fact left for trial and summary judgment was properly granted. We affirm.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.