FILED

Jun 11 2020, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

W. Edward Skees
The Skees Law Office
New Albany, Indiana

ATTORNEYS FOR APPELLEES

Michael M. Maschmeyer
Jeffersonville, Indiana

John D. Cox
Lynch, Cox, Gilman
 & Goodman, P.S.C.
Louisville, Kentucky

# IN THE
# COURT OF APPEALS OF INDIANA

Christal Trowbridge,

*Appellant-Respondent,*
*Co-Personal Representative*

v.

In re the Estate of Everett
Thomas Trowbridge,

*Appellee-Petitioner*

Michael T. Trowbridge,

*Appellee,*
*Personal Representative*

June 11, 2020

Court of Appeals Case No.
19A-ES-3022

Appeal from the
Clark Circuit Court

The Honorable
Andrew Adams, Judge

The Honorable
Kenneth R. Abbott, Magistrate

Trial Court Cause No.
10C01-1807-ES-32

**Vaidik, Judge.**

# Case Summary

In the second appeal in this case, Christal Trowbridge contends that the probate court erred in refusing to probate the will of her ex-husband, Everett Thomas Trowbridge. Although we affirm the probate court's conclusion that the Estate of Everett Thomas Trowbridge ("the Estate") is entitled to the presumption that Trowbridge destroyed his will with the intent to revoke it, we agree with Christal that the court did not engage in the proper analysis to determine whether she rebutted that presumption. We therefore reverse on this issue and remand with instructions for the court to issue a new order applying the correct analysis.

# Facts and Procedural History

Trowbridge and Christal married in 2003 and divorced in 2012. According to their property-settlement agreement, Christal agreed to quitclaim her interest in a house on Tucker Avenue in Clarksville. Following the divorce, Christal never executed a quitclaim deed. And Trowbridge never demanded that she do so. *See Trowbridge v. Trowbridge*, No. 19A-DR-856 (Ind. Ct. App. Sept. 11, 2019).

Trowbridge died on June 6, 2018, leaving behind his father, Everett, and his brother, Michael. On July 13, Michael filed a Petition for Issuance of Letters of Administration, asserting that Trowbridge died intestate. On July 16, the probate court granted Michael's petition and appointed him personal

representative of the Estate. Attorney Michael Maschmeyer represents the Estate.

[4] Four months later, on November 13, Christal filed a Petition for Probate of Will and Appointment of Co-Personal Representative. In the petition, Christal asserted that Trowbridge died testate pursuant to a will executed on April 30, 2012, about two months after their divorce. According to the will submitted by Christal, she and Michael were co-executors, and she was to receive the house on Tucker Avenue, Trowbridge's Edwards Jones retirement account, 25% of his Chase retirement account (the remaining 75% was to go to Michael), and all of his personal property, including his cars. The combination to Trowbridge's safe was handwritten in the margin of the will. The next day, Michael, represented by Maschmeyer, filed an objection to the probate of the will.

[5] A hearing was held in January 2019. Three witnesses testified: Michael, Maschmeyer, and Christal. Michael testified that "right after" his brother died in the hospital, he and his father went to Trowbridge's house and opened the safe. First Hr'g Tr. p. 7. Michael said he found many important papers inside the safe (such as Trowbridge's social-security card and birth certificate) but no will. In addition, Michael testified that he searched the house but didn't find a will. When asked if he knew why his brother would have "destroyed his original will," Michael said he had "no idea[]." *Id.* at 11-12.

[6] Maschmeyer testified about a meeting he had with Christal in October 2018. Specifically, he said Christal called him in early October and told him she had

Trowbridge's will. Christal then met with Maschmeyer at his office on October 15 and showed him the will. Maschmeyer testified about their meeting:

> [Christal] told me when she brought that Will in that [Trowbridge] had given her this document and it had written on it the combination of the safe at his house where the original will would be kept. The document she brought in was therefore a signed copy or duplicate of the original will.

*Id.* at 14-15. According to Maschmeyer, he told Christal that before he could offer the will for probate, he needed to research whether a copy of a will could be probated under Indiana law. Maschmeyer testified that he then contacted Michael to confirm that no will had been found in the safe. During their conversation, Michael "asked [Maschmeyer] to research whether a signed copy was approvable by the court, because he would object to a copy." *Id.* at 15. In addition, Michael told Maschmeyer that "[h]e had heard that a copy was no good." *Id.*

[7] Maschmeyer testified that during his research, he found the case *Estate of Fowler v. Perry*, which provides:

> In Indiana, the general rule is that where a testator retains possession or control of a will and the will is not found at the testator's death, a presumption arises that the will was destroyed with the intent to revoke it. The proponent of the will may rebut that presumption by introducing evidence which tends to support a contrary conclusion such that destruction with the intent to revoke is disproven by a preponderance of the evidence. When a copy of the will is offered for probate, and probate of the copy is contested, the burden of proof remains on the contesting party

throughout the proceeding to establish that the will was in fact revoked. However, the contestor is aided by the presumption of destruction with the intent to revoke. That presumption shifts the burden of going forward to the proponent of the will to present evidence to rebut the presumption. Of course, the contestor still retains the ultimate burden of proof.

681 N.E.2d 739, 741 (Ind. Ct. App. 1997) (citations omitted), *trans. denied*.

Maschmeyer explained that after completing his research, he sent Christal a letter on October 30. The letter provides, in part:

> The document clearly shows the combination for [Trowbridge's] safe, which you told me was where [he] kept his original Will. This would . . . mean the document [Trowbridge] gave you was a signed copy or simply a duplication/copy of his Will.

First Hr'g Ex. 2. Maschmeyer then explained the results of his research, included a copy of *Estate of Fowler*, said he would not be offering the will for probate, and encouraged Christal to obtain an attorney. *Id.*

[8] Finally, Christal testified that shortly after their divorce, Trowbridge brought the original will to her. She specifically denied telling Maschmeyer that the original will was in Trowbridge's safe. In addition, Christal explained that although she and Trowbridge had divorced in 2012, she was still the beneficiary of his accounts, and she had no reason to believe that Trowbridge had revoked his will. Finally, Christal pointed out that Michael stood to gain more if the will was not probated.

[9]     Thereafter, the probate court entered an order denying probate of the will. Christal appealed, and this Court reversed and remanded:

> The outcome here was driven by applying a presumption that a will in the testator's possession later found missing was missing because the testator destroyed it with intent to revoke. But there must be a predicate finding of possession for something to be missing from one's possession. Notwithstanding deficiency in this regard, the probate court afforded the Estate the presumption that the original was destroyed with intent to revoke. Had the presumption been supported by the evidence, it would have shifted to [Christal] the burden of going forward with evidence to rebut the presumption. The probate court summarily concluded that Trowbridge failed to rebut the presumption with admissible and relevant evidence. By statute, the Estate, as contestor of the proffered will, bore the ultimate burden of proof. Moreover, the Estate was not entitled to a presumption in its favor without predicate factual findings. Because the probate court misplaced the burden of proof, its decision is contrary to law.

*Trowbridge v. Estate of Trowbridge*, 131 N.E.3d 630, 634 (Ind. Ct. App. 2019) (citation omitted).

[10]    The probate court held another hearing in October 2019. The court considered the testimony and exhibits from the January 2019 hearing in addition to the new testimony and exhibits. Christal testified that when Trowbridge gave her the original will shortly after their divorce, he told her, "I have no one else that I want to have my goods. My father will be dead before me. I want you to have my things." Second Hr'g Tr. Vol. II p. 81. According to Christal, when she was married to Trowbridge, he and Michael did not have a close relationship and only saw each other on holidays. *See id.* at 71. In addition, Christal testified that

although she had not talked to Trowbridge since 2012, he still named her as the beneficiary of his accounts. In fact, Trowbridge confirmed Christal as the beneficiary of one of his accounts about a year before his death, on March 30, 2017. *See* Second Hr'g Ex. B. Christal testified that Trowbridge never called her to say he was revoking the will. When asked if she thought Michael would have destroyed any will found in his brother's safe, Christal responded "absolutely." Second Hr'g Tr. Vol. II p. 20.

[11] Maschmeyer testified that he took notes during his October 15, 2018 meeting with Christal. According to these notes, Christal told Maschmeyer that the original will was in the safe. *See* Second Hr'g Ex. 6.

[12] Finally, Michael testified that he saw his brother "every three (3) or four (4) days" and that he had access to Trowbridge's house while he was hospitalized. *See* Second Hr'g Tr. Vol. II p. 54.

[13] In November 2019, the probate court entered a second order denying probate of the will. The court first addressed whether, according to *Estate of Fowler*, the Estate was entitled to the presumption that Trowbridge destroyed the will with the intent to revoke it. The court made these findings and conclusions on this point:

> 24) On October 15, 2018, Christal met with Maschmeyer in his office. At this time Maschmeyer was acting as an adversary to Christal . . . ;

25) During the meeting with Maschmeyer, Christal notified Maschmeyer that she had a copy of a Will; that the Will was given to her by her ex-husband; that her ex-husband told her that the original Will is in his safe; and that her copy of the Will had written in the margin the combination of the safe;

26) Contemporaneous with their discussions at the meeting, Maschmeyer wrote notes of the conversation. Those notes support the testimony of Maschmeyer as to the conversation (see Estate Exhibit 6);

27) At the time of the conversation, neither Christal nor Maschmeyer knew of the existing law and they assumed that a copy could be probated;

28) Subsequent to the conversation, Maschmeyer conducted research and discovered the state of the law . . . ;

29) Subsequent to hearing the results of Maschmeyer's research, Christal declared that she had the original Will rather than a copy;

**30) The Court FINDS the combination of Maschmeyer's testimony and the contemporaneous notes he recorded on his note pad to be compelling and hereby concludes by a preponderance of the evidence that [Trowbridge] had the original Will in his safe shortly after its execution on April 30, 2012;**

31) Immediately after [Trowbridge's death], Michael[] and [Trowbridge's] father went to [Trowbridge's] residence and opened the safe wherein many of [Trowbridge's] important papers were found. However, no will was found;

33) [Trowbridge's] Will could not be found upon a search of the house by Michael;

**34) The Court FINDS by a preponderance of the evidence that the original Will could not be found, and that the estate is entitled to the presumption that [Trowbridge] destroyed the Will with the intent to revoke it[.]**

Appellant's App. Vol. II pp. 9-10 (emphases added). The court then addressed whether Christal had rebutted the presumption that the original will was destroyed with the intent to revoke it. The court made these findings and conclusions on this point:

35) The ruling in *Estate of Fowler v. Perry*, 681 N.E.2d 739 (Ind. Ct. App. 1997), states "We acknowledge that Indiana attorneys often retain copies in their files of wills bearing original signatures and that it is not uncommon for such copies to be offered and admitted to probate when there is no objection. However, in those cases where the original will cannot be found and an objection to probate is raised, it is well settled that there is a presumption that the will was destroyed with an intent to revoke.["]

36) The existence of a duplicate does not, in itself, rebut the presumption of revocation. Thus, it remains incumbent upon the will proponent to go forward with additional evidence that the will was not revoked.

37) The Last Will and Testament presented as Estate's Exhibit 1 is the Will that Christal proffers as the original Will. It has the following relevant characteristics:

a. It appears that the typewriting is not the original typewriting that would have come as the original print from a printer. It appears to be a photocopy;

b. The handwritten information on the Will appears to be a photocopy of the original handwritten print;

c. The handwritten safe combination appears to be a photocopy of the original handwritten print;

d. The Court cannot determine by a preponderance of the evidence that the signatures on the Will are original signatures despite the testimony that they were;

38) There was no testimony by a handwriting or document expert to support a conclusion that the Will was an original;

39) The only testimony presented to support the fact that the original Will was not destroyed was that of Christal wherein she said that [Trowbridge] told her that he was giving her the original. The Court has found by its conclusion to Issue 1 that she did not have the original Will;

40) The Court therefore concludes that by virtue of the characteristics of the proffered Will, the absence of expert testimony that it is an original document, and the Court[']s finding that the original Will was in the safe, that Christal has failed to prove by a preponderance that the proffered Will is the original Will, therefore, Christal has not overcome the presumption of revocation.

*Id.* at 10-11.

Christal now appeals.

# Discussion and Decision

[15] Christal contends that the probate court erred in refusing to probate the will Trowbridge gave her. Christal first argues that the court erred in determining that the Estate was entitled to the presumption that the will was destroyed with the intent to revoke it. The general rule is that where a testator retains possession or control of a will and the will is not found at the testator's death, a presumption arises that the will was destroyed with the intent to revoke it. *Estate of Fowler*, 681 N.E.2d at 741. In addition, when the original will cannot be located, it is not assumed to have been lost; rather, it is presumed to have been destroyed with the intent to revoke it. *Id.* at 742. A duplicate will does not survive revocation of the original. *Id.*

[16] Here, ample evidence in the record supports the probate court's findings that Trowbridge retained possession or control of the original will, that Christal had a photocopy, and that the original will was not found at Trowbridge's death. Maschmeyer testified that during their October 15, 2018 meeting, Christal told him that Trowbridge "had given her this document and it had written on it the combination of the safe at his house where the original will would be kept." First Hr'g Tr. pp. 14-15. In addition, Maschmeyer took contemporaneous notes during the meeting, and according to these notes, Christal told Maschmeyer

that the original will was in Trowbridge's safe.[1] Michael testified that after Trowbridge died in the hospital, he went to Trowbridge's house but didn't find a will in the safe or anywhere else. This evidence supports the court's findings that Trowbridge "had the original Will in his safe shortly after its execution on April 30, 2012," that Christal had a "photocopy," and that "the original Will could not be found" at Trowbridge's death.[2] Appellant's App. Vol. II pp. 9-10. Accordingly, we affirm the probate court's conclusion that the Estate is entitled to the presumption that Trowbridge destroyed the will with the intent to revoke it.

[17] Christal next argues that the probate court did not engage in the proper analysis to determine whether she rebutted the presumption that the original will was destroyed with the intent to revoke it. We agree. The probate court found that Christal failed to rebut the presumption because she did not possess the original

---

[1] On appeal, Christal argues that the probate court erred during the second hearing in admitting Maschmeyer's testimony because he and Christal had an attorney-client relationship. When Christal objected on these grounds at the hearing, Maschmeyer argued that he and Christal did not have an attorney-client relationship, as there was "no indication that he had ever accepted her as a client or that she believed he was her attorney." Second Hr'g Tr. Vol. II p. 31. The court ruled that Christal "waived" any objection because she did not object to similar testimony from Maschmeyer at the first hearing. *Id.* at 32. We agree with the court that Christal waived this issue for review.

[2] The evidence shows that Trowbridge got a new safe after he executed his will. The probate court made the following finding regarding this fact:

> 32) The safe wherein the papers were found was a replacement to the original safe wherein the original Will had been placed. The original **Will** had been given to a neighbor when the replacement safe was acquired. The Court can find no relevant inference to be made from this circumstance[.]

Appellant's App. Vol. II p. 10 (emphasis added). Christal seizes on this highlighted language as support for her argument that Trowbridge did not maintain possession or control of his will. However, because the evidence shows that Trowbridge gave his **safe** to a neighbor (and not its contents), it appears that the probate court meant to say "safe" instead of "Will." The court should fix this typographical error on remand.

will. But this is not the issue. If Christal possessed the original will, then there would be no need for the court to engage in the burden-shifting analysis in *Estate of Fowler*. Instead, as Christal points out, evidence that can rebut the presumption that a will was destroyed with the intent to revoke it includes (1) evidence of the testator's intent when he allegedly revoked the will, (2) evidence relating to the ability of the testator to obtain access to the will during the alleged period of revocation, (3) evidence relating to the competency of the testator during the alleged period of revocation, and (4) evidence relating to the ability of interested parties to obtain access to the will before its disappearance. *In re Estate of Borom*, 562 N.E.2d 772, 776 (Ind. Ct. App. 1990); *see also* 26 Ind. Prac., Anderson's Wills, Trs., and Estate Planning § 2:44 (2019-2020 ed.) ("The facts presented to rebut the presumption may or may not be sufficient, depending on the circumstances. Facts such as that a testatrix never mentioned revocation, and that her heirs had access and did enter her home were sufficient to rebut the presumption of revocation arising from a torn will." (citations omitted)).

[18] Here, the record contains the following evidence that could rebut the presumption:

- Trowbridge did not execute his will until **after** he and Christal were divorced.

- Trowbridge continued to list Christal as the beneficiary of his accounts as recently as the year before he died.

- According to Christal, Trowbridge and his brother did not have a close relationship while they were married.

- Even though the property-settlement agreement required Christal to quitclaim her interest in the house on Tucker Avenue, Christal never did so, and Trowbridge took no action.

- Christal was never informed that Trowbridge had revoked his will.

- Michael had "no idea[]" why his brother would have revoked his will.

- Michael had access to Trowbridge's house while he was hospitalized, and "right after" Trowbridge died, Michael went to his house and opened the safe.

- When Christal filed the petition to probate the will, Michael asked Maschmeyer to research whether a copy of a will could be probated because he had "heard" that a copy wasn't good enough.

- Michael stood to gain more under intestacy laws if the will was not probated.

- According to Christal, she had no doubt that Michael would have destroyed any will found in the safe.

But because the probate court did not engage in the proper analysis, it has not had the opportunity to determine, in the first place, whether these facts are sufficient to rebut the presumption. We therefore reverse on this issue and

remand with instructions for the court to enter a new order applying the proper analysis. No new hearing is necessary.

[19] Affirmed in part and reversed and remanded in part.

May, J., and Robb, J., concur.