[No. E036833. Fourth Dist., Div. Two. Mar. 29, 2005.]

EVA LAUERMANN, as Personal Representative, etc., et al., Petitioners, v. THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent; ANUCHAR MUONGPRUAN et al., Real Parties in Interest.

1328

COUNSEL

Ward & Ward, Alexandra S. Ward; Hartnell, Lister & Moore and Walter Moore for Petitioners.

No appearance for Respondent.

Gresham Savage Nolan & Tilden and Philip M. Savage IV for Real Parties in Interest.

OPINION

**KING, Acting P. J.**—In this case we are asked to determine the meaning of the term "duplicate original" as used in Probate Code section 6124.[1] We hold that the term does *not* include a photocopy not personally executed by the testator and witnesses. Accordingly, the presumption that the testator destroyed his will with the intent to revoke it will apply at the trial of the matter.

Although the procedural history of the case is somewhat complicated, the significant facts may be briefly stated.[2] Decedent, Werner (or Warner) Lauermann, was survived by neither spouse nor issue. In 1987 he executed a will leaving certain described real property to real parties in interest Ranu Muongpruan and her children.[3] However, the original of this will could not be found following his death. What *was* found, apparently among decedent's possessions, was a photocopy of the will. It bore no indication of intent to revoke; that is, there were no revocatory notations, crossings-out, or other defacement of the copy. (See § 6121: "burned, torn, canceled, obliterated, or destroyed . . . .")

Real party in interest Anuchar Muongpruan petitioned to have the will admitted to probate and for letters of administration with will annexed. This

---

[1] All subsequent statutory references are to the Probate Code unless otherwise specified.

[2] Petitioners point out that real parties did not file a formal return, and therefore ask that we deem all factual allegations in the petition to be unrefuted and established in favor of petitioners. It is, of course, true that a failure to deny pleaded allegations generally results in an admission of the fact alleged. (See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 977–979, pp. 438–440.) However, in this case we expressly offered real parties the option of relying on their informal opposition in lieu of filing a formal return. We will not penalize a party for taking advantage of our efforts to streamline appellate litigation. Accordingly, we decline the request.

That said, there do not appear to be significant disputed facts relevant to the narrow issue before this court.

[3] The will did not dispose of any residuary estate. Although it expressly indicated decedent's wish not to bequeath anything to any former spouse, it did not specifically mention Gerda Lauermann or her brother. The will does contain a general in terrorem clause.

petition was opposed by decedent's sister, Gerda Lauermann, and Eva Lauermann, who now appears in the capacity of personal representative of the estate of decedent's brother, Gerhard.[4] They duly filed a will contest that was set for trial or hearing when the current petition was filed and we stayed proceedings pending decision in this matter.

Section 6124 provides that, "If the testator's will was last in the testator's possession, the testator was competent until death, and neither the will nor a duplicate original of the will can be found after the testator's death, it is presumed that the testator destroyed the will with intent to revoke it. This presumption is a presumption affecting the burden of producing evidence."[5] In proceedings on the issue, real parties in interest persuaded the trial court that the photocopy of the will qualified as a "duplicate original" so that the presumption would *not* apply. However, the trial court indicated that the issue was one appropriate for immediate resolution by an appellate court.[6] We agreed, and issued an order to show cause on the petition filed by Gerda Lauermann and Eva Lauermann.

## DISCUSSION

■ As both sides agree, in construing the statutory term "duplicate original" we are to consider the language itself, the purpose of the statute, and common sense and justice. (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238–1239 [8 Cal.Rptr.2d 298].)[7] We begin with the language.

■ "Original," in the context before us, is defined as "a primary manuscript from which copies are made." (Webster's 3d New Internat. Dict. (1993) p. 1591.) A duplicate, of course, is simply a copy, so that "duplicate original" may seem to be an oxymoron. However, it need not be so. Section 6121, for example, clearly contemplates that there may be more than one "original" will when it provides that "A will *executed in duplicate* . . . is revoked if one

---

[4] Gerhard presumably survived decedent, but has since died.

[5] It appears to be undisputed that the first two conditions set out in the statute were satisfied in this case.

[6] Code of Civil Procedure section 166.1 provides in part that "a judge may indicate in any interlocutory order a belief that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation." The intent is evidently to encourage the appellate court to review the issue on the merits if the losing party files a petition for extraordinary relief.

[7] The court actually refers to an examination of legislative history as the second step. However, the purpose of such an examination is to determine the intention of the Legislature and the purpose of the statute. (See *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1146–1147 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

of the duplicates is burned, torn, canceled, obliterated, or destroyed, with the intent . . . of revoking it . . . ." (Italics added.) It is also clear that "[t]here is no reason why a testator may not execute two valid wills with identical provisions to insure the execution of his wishes should one of them be accidentally lost or destroyed." (*Estate of Janes* (1941) 18 Cal.2d 512, 516 [116 P.2d 438].

Section 6121 uses the phrase "will executed in duplicate" while section 6124 covers the situation in which "neither the will nor a duplicate original of the will can be found . . . ." The former phrase obviously means that the testator has physically signed two separate *copies* of his will, each of which has also been witnessed and signed by the witnesses. The question is whether "duplicate original" in section 6124 carries the same meaning.

Real parties argue that the difference in phrasing represents a conscious intention on the part of the Legislature to distinguish between two situations, and that section 6124 applies to a duplicate created, photographically or otherwise, from a single personally executed and witnessed will. They rely on *Tracy A. v. Superior Court* (2004) 117 Cal.App.4th 1309, 1317 [12 Cal.Rptr.3d 684], which does refer to "a *photocopy* or other *duplicate original* of [a] document." (Italics added.) However, this language cannot fairly be used to support the result desired by real parties. In *Tracy A.*, the court was interpreting section 1513, subdivision (d), which provides that the report of a guardianship investigator "is confidential and shall only be made available to persons who have been served in the proceedings . . . . The clerk of the court shall make provisions for the limitation of the report exclusively to persons entitled to its receipt." The trial court had a practice of permitting parents—to whom the report had to be "available" (see § 1513, subd. (d))—only to examine it and make longhand notes or copies. The holding of the court was that such persons were entitled to "receive" the report *physically and permanently*, and the language upon which real parties rely merely expresses the court's recognition that because the *original* could not reasonably be provided, a photocopy would suffice.

It is one thing to say that when a party is entitled to a document for *informational* purposes, a photocopy is sufficient as a "duplicate original." It is quite another to assert that a photocopy may be *effective as an original* in a context where the law requires that a physical document, to be legally operative, must be personally signed and witnessed in a particular manner. For this reason, we find *Tracy A.* not helpful or persuasive.

Turning now to the intent and purpose of section 6124, "The stringent requirements for proof of lost or destroyed wills are imposed to avoid fraud." (*Estate of Janes, supra*, 18 Cal.2d at p. 518.) It is plainly in support of this purpose that section 6124 creates a presumption of revocation where a will

known or believed to have been executed cannot be found.[8] By contrast, if a testator has personally executed duplicate originals, there is little likelihood of fraud when one copy is available for probate even if the second cannot be found. Although it is true that the intentional destruction by the testator of any copy of a "will executed in duplicate" operates as a revocation (§ 6121), as the Law Revision Commission recognized, a testator who has left an executed copy of his will with, for example, his attorney (or in a safe deposit box) may be less careful to preserve the copy in his personal possession. (See Cal. Law Revision Com. com., 53 West's Ann. Prob. Code (1991 ed.) foll. § 6124, p. 289.) In addition, it is likely that a testator who has executed two or more "duplicate originals" would make an effort to destroy all such copies if he or she wishes to revoke the will.

On the other hand, the existence of mere photocopies, in our view, does *not* suggest that the testator might feel less need to keep track of the original of his or her will. Photocopies are easily made and in common understanding are readily distinguished from an "original." A testator may make several photocopies of his or her will, perhaps to send to relatives or other beneficiaries, or to retain for the purpose of drafting possible changes. It would be unreasonable to expect a testator to track down and destroy all such copies before giving effect to his intended revocation. Thus, the rule urged by real parties in order to carry out a supposed testamentary intent might just as well have the pernicious effect of preserving the validity of a will which the testator had done everything in his power to revoke.

Furthermore, not only are photocopies ubiquitous, but the simplicity of their creation stands in stark contrast to the considerable formalities surrounding the execution of a will.[9] Given the importance placed upon the creation and execution of an original will, we do not think that a reasonable testator would believe that a photocopy would be legally effective in place of the original document, and realize that all such copies must be destroyed before a revocation became effective.

Real parties urge that their construction is consistent with logic and justice because there is no reason why decedent would have preserved the photocopy

---

[8] It is as well to note that the statute clarifies that the presumption is one affecting only the burden of producing evidence rather than the burden of proof. It may therefore be rebutted by evidence showing that it is "equally probable" that the will was destroyed inadvertently or without the intent to revoke it. (*Estate of Bristol* (1943) 23 Cal.2d 221, 224–225 [143 P.2d 689]; *Estate of Obernolte* (1979) 91 Cal.App.3d 124, 129 [153 Cal.Rptr. 798].)

[9] We think we can say without fear of contradiction that decisions concerning who will get one's property upon one's death are some of the most difficult and sobering imaginable. The drafting and execution of a will typically involves attorneys; the testator must make it clear in front of witnesses that he or she understands and intends that the document is in fact a will. The witnesses are generally required to confirm the testator's competence, freedom from undue influence, and testamentary intent. (See §§ 6110, 8220–8221.)

if he intended to revoke his will, and its preservation suggests continued satisfaction with his testamentary arrangements. For the reasons above, we reject the argument. In the absence of a true original, the preservation of a photocopy is simply not of sufficient significance to permit the drawing of such an inference.

We therefore hold that the trial court erred in ruling that "duplicate original," as used in section 6124, includes a photocopy not personally signed by the testator and the witnesses. The phrase is not legally distinguishable from "a will executed in duplicate." Accordingly, the presumption of revocation will apply.

Let a peremptory writ of mandate issue as prayed. Petitioner to recover her costs.

McKinster, J., and Gaut, J., concurred.