2008-NMSC-064

197 P.3d 1

**In the Matter of the Estate of George Gushwa, deceased.**

**Zane GUSHWA, Petitioner–Petitioner,**

v.

**Wanda HUNT, Respondent–Respondent.**

**No. 30,592.**

Supreme Court of New Mexico.

Nov. 13, 2008.

Doerr & Knudson, P.A., Randy J. Knudson, Portales, NM, for Petitioner.

Garrett Law Firm, P.A., Michael T. Garrett, Clovis, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} The New Mexico Probate Code specifies the means by which a testator may revoke a prior will. *See* NMSA 1978, § 45-2-507(A) (1993) (stating that a will may be revoked by either executing a subsequent will or by performing a revocatory act on the will). The district court, concluding that the purported revocation in this case was legally ineffective, granted summary judgment, and the Court of Appeals affirmed in a well-reasoned opinion. On certiorari, we affirm most of that opinion, reversing only a small part and remanding for the district court to adjudicate a remaining allegation of fraud and to consider the propriety of a constructive trust in this case.

## BACKGROUND

{2} In June 2000, Decedent George Gushwa executed his Last Will and Testament (the Will) while his wife, Zane Gushwa, the Petitioner in this appeal, was in the hospital. Decedent was assisted in preparing the Will by his niece, Betty Dale, and her husband, Ted Dale (Ted). The Will provided that Decedent's separate property be held in trust for the support of Wife, during her life, and upon her death it was to be distributed to Decedent's nieces and nephews. Wife received no permanent distribution under the Will. Decedent named Ted as the trustee, and gave the original Will to him for safekeeping. The Dales were not beneficiaries under the Will.

{3} Shortly thereafter, it appears that Decedent decided he wanted to revoke the Will. According to Wife, Decedent called Ted to regain possession of the original Will, but Ted refused to send it. Ted denies receiving such a request from Decedent. Instead, Ted submitted an affidavit stating that Wife called him and requested that he send *her* the original Will. Ted then notified Decedent's attorney and asked whether he should send Wife the original Will, because Ted knew that Decedent did not want her to see it. Decedent's attorney told Ted to contact Decedent, which Ted did. According to Ted, Decedent asked him to discuss the Will only in general terms with Wife, and told Ted which pages of the Will to send to Decedent. Ted then sent photocopies of those pages to Decedent.

{4} In January 2001, Decedent contacted another lawyer to help him revoke the Will. In February 2001, his new lawyer assisted him in drafting a document entitled "Revocation of Missing Will(s)," in which Decedent repeatedly stated that he wanted to revoke his previous Will. At the same time, on the advice of counsel Decedent wrote "Revoked" on the copy of three pages of the Will, presumably the same three pages that he received from Ted, and attached those pages to the Revocation of Missing Will(s) document. That document was signed by Decedent and two witnesses and was notarized. In April 2001, Decedent received a photocopy of the entire Will from his previous attorney and wrote "Revoked" on each page of that copy of the Will.

{5} Decedent died in 2005. After his death, Wife filed an application for informal appointment of a personal representative. Wife asserted that her husband died intestate and that she was not aware of any unrevoked testamentary instruments. In her application, Wife listed the names of several interested parties, including Wanda Hunt (Wanda), Decedent's niece, the Respondent in this appeal. Wanda objected to Wife's application, arguing that the June 2000 Will had not been revoked and was still in force, because Decedent had failed to follow the statutory formalities for revocation set forth in the Probate Code.

{6} In response to Wanda's objections, Wife argued that the June 2000 Will had been revoked by the Revocation of Missing Will(s) document, and also by Decedent's act of writing "Revoked" on the photocopied pages of the Will. She further contended that Ted's behavior prevented Decedent from obtaining possession of the original Will so that he could write "Revoked" on the original instead of just a copy. Wife asked the district court to impose a constructive trust upon Decedent's estate if the court found that the Will had not been successfully revoked under the statute. In July 2006, the district court agreed with Wanda that Decedent's will had not been revoked in a manner

consistent with the requirements of the Probate Code and granted summary judgment in her favor and against Wife.

{7} The Court of Appeals affirmed the district court, concluding that the Revocation of Missing Will(s) document was not testamentary in nature; it was not a subsequent will as required by statute, and therefore it did not revoke Decedent's prior Will. *In re Estate of Gushwa*, 2007–NMCA–121, ¶ 16, 142 N.M. 575, 168 P.3d 147. The Court of Appeals also agreed that the act of writing "Revoked" on the photocopied will was not a legally effective revocatory act because such an act must be done on an original or a duplicate original and not a photocopy. *Id.* ¶ 29. Finally, the Court of Appeals concluded that Ted's refusal to surrender the original will did not preclude summary judgment. *Id.* With the exception of the last point, we agree with much of the Court of Appeals' analysis.

## DISCUSSION

{8} This appeal raises two questions under the Probate Code and one question of equity. First, we consider whether Decedent's execution of the Revocation of Missing Will(s) document satisfies the requirements of Section 45–2–507(A)(1), dealing with revocation by writing. Second, we determine whether Decedent's act of writing "Revoked" on a photocopy is a revocatory act within the meaning of Section 45–2–507(A)(2). Finally, we examine whether the allegations of fraud against Ted create a genuine issue of material fact that, if proven, might justify relief and preclude summary judgment.

{9} We review a district court's grant of summary judgment de novo. *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* Because resolution on the merits is favored, a reviewing court "view[s] the facts in a light most favorable to the party opposing the motion and draw[s] all reasonable inferences in support of a trial on the merits." *Handmaker v. Henney*, 1999–NMSC–043, ¶ 18, 128 N.M. 328, 992 P.2d 879.

{10} Our Probate Code provides that a will or any part thereof may be revoked in one of two ways. *See* § 45–2–507. A testator may revoke a previous will "by executing a subsequent will that revokes the previous will or part expressly or by inconsistency." Section 45–2–507(A)(1). A testator may also revoke a previous will "by performing a revocatory act on the will if the testator performed the act with the intent and for the purpose of revoking the will or part." Section 45–2–507(A)(2). A "revocatory act on the will" includes "burning, tearing, canceling, obliterating or destroying the will or any part of it." *Id.* For purposes of this appeal, we concentrate on the word "canceling," but we turn first to the requirement in Section 45–2–507(A)(1) for revocation by a "subsequent will."

### Revocation by Writing

{11} In this case, the district court specifically found that "[n]either party proposes the revocation document satisfies the requirements of § 45–2–507A(1)." Nevertheless, the court conducted its own analysis of the Revocation of Missing Will(s) document and concluded that the document was not a "subsequent will" as set forth in Subsection –507(A)(1). The court specifically noted that the document "act[ed] instanter and not upon [Decedent's] death[,]" and therefore could not be a testamentary disposition.

{12} Relying on *In re Estate of Martinez*, 1999–NMCA–093, 127 N.M. 650, 985 P.2d 1230, the Court of Appeals agreed that the Revocation of Missing Will(s) document was not a subsequent will within the meaning of the Code. *Gushwa*, 2007–NMCA–121, ¶¶ 12–16, 142 N.M. 575, 168 P.3d 147. The Court noted that "although some portions of the document may arguably contain testamentary language, the document itself was not intended to be a subsequent will." *Id.* ¶ 16.

{13} At the outset, we note that our Probate Code, unlike that of other states, does not allow for revocation of a will by any "other writing." *Compare* § 45–2–507(A)(1) ("A will or any part thereof is revoked . . . by executing a subsequent will that revokes the previous will or part expressly or by inconsis-

tency ....") *with* Fla. Stat. § 732.505(2) (2002) ("A will or codicil, or any part of either, is revoked ... [b]y a subsequent will, codicil, or *other writing* executed with the same formalities required for the execution of wills declaring the revocation." (Emphasis added.)). As our Court of Appeals has previously explained:

Generally, the question whether a will can be revoked by a writing not testamentary in character depends upon the provisions of the governing statute.... [W]here the statute omits the clause "some other writing" or its equivalent, and simply states that no will shall be revoked except by some other "will, testament or codicil in writing, declaring the same," it has been held that a will may not be revoked by a writing not testamentary in character.

*Martinez*, 1999–NMCA–093, ¶ 11, 127 N.M. 650, 985 P.2d 1230 (quoting E.T. Tsai, Annotation, *Revocation of Will By Nontestamentary Writing*, 22 A.L.R.3d § 2(a), at 1351 (1968)).

{14} Wife argues that the Revocation of Missing Will(s) document should be given the effect of a subsequent will because of its language expressly revoking Decedent's prior will. Wife relies on the definition of "will" contained in the definitions section of the Probate Code. *See* NMSA 1978, § 45–1–201(A)(53) (1995) (defining a will as "any testamentary instrument that ... revokes or revises another will").

{15} Wife's position, however, is at odds with the Code's specific language describing the only legally effective methods of revocation. If a will could be revoked by any writing that simply revoked another will, without the necessary testamentary language—or that it be in fact a "subsequent will"—then a will could be revoked by "any other writing," contrary to the Code's specific language and the legislative intent to limit the available means of revocation. Because our Probate Code requires revocation by a subsequent will, we are guided by this more specific statement rather than a generic definition. Accordingly, we reject Wife's argument that the Revocation of Missing Will(s) document satisfies the requirements of Section 45–2–507(A)(1). It clearly does not, re-

gardless of Decedent's intent. Our Probate Code requires an exacting attention to form as well as intent to validate a revocation. *See Martinez*, 1999–NMCA–093, ¶ 11, 127 N.M. 650, 985 P.2d 1230.

{16} Similarly, Wife's argument that other language in the Revocation of Missing Will(s) document gives it the effect of a subsequent will does not persuade us. Instead, the language chosen by Decedent clearly shows that he knew he was not drafting a subsequent will.

{17} First, in the Revocation of Missing Will(s) document, Decedent explained in writing his correct understanding of the two methods by which a testator can revoke a will—drafting a subsequent will or performing a revocatory act on the will. Decedent then listed acceptable revocatory acts, including burning or canceling. After establishing that he knew how to revoke a will, and what acts constitute a revocatory act on a will, Decedent then "attest[ed] that [he] canceled the first three (3) pages of the will executed ... on or about June 6, 2000, with the express intent to revoke the same." Thus, it is clear from the Revocation of Missing Will(s) document that if Decedent intended to revoke the Will, it was not by drafting a subsequent will, but by performing a revocatory act on the photocopy of the Will.

{18} Additionally, Decedent used conditional language in the Revocation of Missing Will(s) document which strongly suggests that he did not intend the Revocation document to act as a subsequent will. Decedent wrote that he retained the option of drafting a subsequent will. Decedent stated that he knew that his property would pass through intestate succession "*if* [he did] not make a subsequent will." (Emphasis added.) In other words, the Revocation of Missing Will(s) document, though an expression of intent, was not a subsequent will in Decedent's mind. In addition, while Decedent excluded Ted and Betty from inheriting any of his property, he explained that they were not to inherit "whether by will or by intestate succession," leaving open the possibility of a subsequent will.

{19} Our review of the statutory requirements for revocation by a subsequent will, along with our analysis of the language Decedent selected for use in the Revocation of Missing Will(s) document, persuades us that the Revocation of Missing Will(s) document was never intended to be a subsequent will and should not be given the effect of a subsequent will by this Court. Therefore, as a matter of law consistent with the clear language of the Probate Code, this document did not revoke Decedent's prior will.[1]

## The Effect of a Revocatory Act on a Photocopy of the Will

■ {20} In addition to revoking a will by executing a subsequent will, the Probate Code provides that a will may be revoked by performing a revocatory act on the will. Section 45–2–507(A)(2). ("A will . . . is revoked . . . by performing a revocatory act on the will if the testator performed the act with the intent and for the purpose of revoking the will. . . ."). The district court concluded that Decedent's act of writing "Revoked" on a photocopy was insufficient to revoke the Will because a photocopy of a will does not have the same legal status as an executed copy of a will. The Court of Appeals agreed. *Gushwa*, 2007–NMCA–121, ¶ 29, 142 N.M. 575, 168 P.3d 147.

{21} The Court of Appeals first noted that an executed copy differs from a photocopy because an executed copy, or duplicate original, is executed with the same formalities as the original; the executed copy is signed, witnessed, and notarized at the same time as the original. *Id.* ¶ 20. Because each copy is signed and witnessed, the executed or duplicate copy has the legal effect of the original. *Id.* After reviewing these differences, the Court of Appeals concluded that Decedent's act of writing "Revoked" on a photocopy of the Will was not a revocatory act within the meaning of Subsection –507(A)(2). *Gushwa*, 2007–NMCA–121, ¶ 29, 142 N.M. 575, 168 P.3d 147.

{22} Wife argues that a majority of modern courts hold that a testator's revocation of a copy of will is a legally effective revocation of the original will. In support of her argument, Wife relies on an annotation that contains only six cases, all decided prior to 1952. *See* 79 Am.Jur.2d *Wills* § 516 (2002). These cases do not support Wife's position because the courts were considering the legal efficacy of fully executed duplicate copies, not photocopies of an original will. *See In re Holmberg's Estate*, 400 Ill. 366, 81 N.E.2d 188, 189 (1948) (explaining that a duplicate original is a carbon copy that is itself executed and attested); *Roberts v. Fisher*, 230 Ind. 667, 105 N.E.2d 595, 597 (1952) (same); *Menzi v. White*, 360 Mo. 319, 228 S.W.2d 700, 701 (1950) (same); *In re Wall's Will*, 223 N.C. 591, 27 S.E.2d 728, 729 (1943) (same); *In re Bates' Estate*, 286 Pa. 583, 134 A. 513, 513 (1926) (same); *Blalock v. Riddick*, 186 Va. 284, 42 S.E.2d 292, 295 (1947) (same).

{23} Wife acknowledges that these cases address duplicate originals, but she contends that under our rules of evidence the distinction between a duplicate original and a photocopy "is a distinction without a difference." Relying on Rule 11–1003 NMRA, "Admissibility of Duplicates," Wife argues that a photocopy of a will should have the same evidentiary value as a duplicate original will.

{24} We disagree. Our rules of evidence require admission of an original "[t]o prove the content of a writing, recording or photograph." Rule 11–1002 NMRA. Our rules also provide that a duplicate, which includes a photocopy, may be admitted in lieu of an original to prove the contents of a document unless there is a genuine question about the authenticity of the original or unless it would be unfair to admit the duplicate. Rule 11–1003. Based on this evidentiary principle, courts have admitted a photocopy of a will in

---

1. In considering the thoughtful dissent authored by Chief Justice Chávez, we emphasize that under Section 45–2–507(A) of our Probate Code only a subsequent will may serve to revoke an existing will. As noted earlier, the district court found, without objection on appeal, that neither party put forth the Revocation of Missing Will(s) document as a subsequent will. Wife did not submit the document to probate, instead claiming that Decedent died without a will, intestate. Given these and other circumstances, the district court correctly concluded as a matter of law that Decedent did not comply with Section 45–2–507(A)(1) despite Decedent's indications that he may have wanted to revoke by this or some other means.

lieu of an original as evidence to prove the contents of a lost will.

{25} For example, in *In re Estate of Christoff*, the Michigan Court of Appeals, relying on its rule of evidence describing the admissibility of duplicates, held that a photocopy of a lost will should be admitted to prove the contents of the original. 193 Mich.App. 468, 484 N.W.2d 743, 745 (1992) (citing Mich. R. Evid. 1003). When, however, the proponent seeks to admit the photocopy for a purpose other than as evidence of the contents of a lost will, courts are more resistant to admitting the photocopy. *See In re Estate of Goodwin*, 18 P.3d 373, 376 (Okla.Civ.App. 2000) (holding that a photocopy of the original will that was not itself signed by the testator could not be admitted to probate).

{26} In making her argument that a photocopy of a will and an executed original will should be given the same evidentiary weight, Wife fails to appreciate that under our rules of evidence a duplicate is only admissible to the same extent as the original: to prove the contents of the original. Instead, Wife is attempting to give the photocopy the same legal significance as an executed original, which our Probate Code does not permit.

{27} Instead, our Probate Code mandates that a revocatory act be performed "on the will." Section 45–2–507(A)(2). While the Code does not explicitly require that the act be performed on the original or on an executed original, such a requirement is implicit in the statutory term "will." The Probate Code sets forth specific testamentary requirements for executing a will. *See* NMSA 1978, § 45–2–502 (1995) ("[A] will must be: A. in writing; B. signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction; and C. signed by at least two individuals . . . ."). Requiring that the revocatory act be performed on an original, or on a fully executed copy, simply comports with the statutory requirements for executing a will. *See In re Estate of Tolin*, 622 So.2d 988, 990 (Fla.1993) ("[The probate code] prescribes the manner used to properly execute a will or codicil. The use of the terms 'will or codicil,' which have specific statutory definitions, shows a legislative in-

tent that in order to effectively revoke a will or codicil by a physical act, the document destroyed must be the original document.").

{28} There is a real and valuable distinction between a photocopy admitted only to prove the contents of a will and a photocopy admitted as a legally effective original. *See Lauermann v. Superior Court*, 127 Cal. App.4th 1327, 26 Cal.Rptr.3d 258, 261 (2005) ("It is one thing to say that when a party is entitled to a document for *informational* purposes, a photocopy is sufficient as a 'duplicate original.' It is quite another to assert that a photocopy may be *effective as an original* in a context where the law requires that a physical document, to be legally operative, must be personally signed and witnessed in a particular manner.").

{29} Further, we agree with our Court of Appeals that treating photocopies differently from originals is important as a matter of policy. As that Court explained, the requirement of an original can protect against fraudulent reproduction of unauthorized wills. *See Gushwa*, 2007–NMCA–121, ¶ 21, 142 N.M. 575, 168 P.3d 147. Photocopies can be readily produced and the existence of multiple copies of a will can engender confusion, especially when the issue is whether the will has been validly revoked. *Id.*

{30} We are also informed by case law from other jurisdictions where courts have held that a revocatory act performed on a mere photocopy is legally ineffective. *See Tolin*, 622 So.2d at 990 (holding that the decedent's attempted revocation was ineffective, even though the decedent "destroyed a document which 'was an exact copy of the fully executed original . . . and was in all respects identical to the original except for the original signatures' "); *In re Krieger*, 191 A.D.2d 994, 595 N.Y.S.2d 272, 272 (1993) (holding "that a will cannot be revoked by the physical destruction of an unexecuted conformed copy"); *Estate of Charitou*, 156 Misc.2d 952, 595 N.Y.S.2d 308, 311 (Sur.Ct. 1993) (holding that revocatory acts must be performed on the original will, not on a photocopy of the original); *In re Estate of Stanton*, 472 N.W.2d 741, 747 (N.D.1991) ("In this case, the physical act of destruction . . . was not made of the original will, but rather of a

copy of the will. While the destruction of an executed, duplicate will may operate to revoke the original will, the destruction of an unexecuted or conformed copy is ineffectual as an act of revocation regardless of the testator's intent." (citations omitted)). Accordingly, we hold that Decedent's revocatory acts performed on a mere photocopy of his original Will do not comport with the statutory requirements of Section 45–2–507(A)(2).

## Imposition of a Constructive Trust

■ {31} Because we conclude that Decedent's attempt to revoke the Will was legally ineffective, we decline to remand for a trial on that issue. We are, however, mindful of the inequity that this holding may work under the circumstances of this particular case if, as alleged, Decedent was fraudulently prevented from regaining possession of his original Will.

{32} Anticipating that the district court might find Decedent's revocatory attempts inadequate, Wife asked the district court to impose a constructive trust on the estate to prevent an inequitable result. While Wife did not specifically argue to the Court of Appeals that the district court erred by not imposing a constructive trust, she has consistently argued that disputed issues of fact exist which preclude summary judgment. Specifically, Wife argued that Ted's refusal to return the original created a disputed issue of fact that should have been resolved at trial. To this Court, Wife again asks that we remand for a trial to remedy what she perceives as an unjust result arising from a formalistic interpretation of the Probate Code.

■ {33} Our courts have correctly held that "statutes providing for revocation of wills are mandatory and that generally a will may be revoked only in the manner prescribed by statute." *Martinez*, 1999–NMCA–093, ¶ 9, 127 N.M. 650, 985 P.2d 1230 (citing *Albuquerque Nat'l Bank v. Johnson*, 74 N.M. 69, 71, 390 P.2d 657, 658 (1964)). To ameliorate the occasional inequities that such a formal approach may unintentionally produce, courts have resorted to equitable remedies such as the imposition of a constructive trust. *See Tolin*, 622 So.2d at 990–91.

■ {34} A court will impose a constructive trust "to prevent the unjust enrichment that would result if the person having the property were permitted to retain it." *In re Estate of Duran*, 2003–NMSC–008, ¶ 34, 133 N.M. 553, 66 P.3d 326. Courts have held that certain conduct, "such as fraud, constructive fraud, duress, undue influence, breach of a fiduciary duty, or similar wrongful conduct[,]" may warrant the imposition of a constructive trust. *Id.* (quoted authority omitted). "If a court imposes a constructive trust, the person holding legal title is subjected to an equitable duty to convey the property to a person to whom the court has determined that duty is owed." *Id.*

{35} Wife maintains that Ted wrongfully prevented Decedent from regaining possession of his original Will. Decedent's niece, Wanda, disputes these allegations with an affidavit from Ted. In response to Wife's allegation that he refused to send Decedent the original Will, Ted denies ever receiving a call from Decedent requesting the original Will. Instead, he explains that it was Wife, not Decedent, who called him asking for the original Will. Ted also states that Decedent instructed him not to send Wife the original and to send Decedent a copy of only certain pages of the Will.

{36} Viewing this evidence in the light most favorable to Wife, as the party opposing summary judgment, and drawing all inferences in favor of a trial on the merits, we conclude that summary judgment was not appropriate with respect to this issue. *See Handmaker*, 1999–NMSC–043, ¶ 18, 128 N.M. 328, 992 P.2d 879. A disputed issue of material fact remains unresolved, namely whether Ted wrongfully prevented Decedent from obtaining the original Will, thereby making it virtually impossible for Decedent to comply with the statutory requirements for revocation. Thus, we remand to the district court to adjudicate that issue and decide whether, as a consequence, a constructive trust should be imposed under the facts of this case.

## CONCLUSION

{37} We affirm in part and reverse in part and remand to the district court for further proceedings consistent with this Opinion.

{38} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, PETRA JIMENEZ MAES, CHARLES W. DANIELS, Justices, and EDWARD L. CHÁVEZ, Chief Justice (dissenting).

CHÁVEZ, Chief Justice (dissenting).

{39} Decedent George Gushwa executed a document (the Revocation of Missing Will(s) document) explaining that he wanted his prior will to be revoked and describing how he wished his property to be distributed upon his death. He was careful to follow all of the formalities required of a testator under the New Mexico Probate Code. After his death, the district court, without any specific fact-finding, refused to give effect to Decedent's clearly expressed desires. The majority gives this decision its seal of approval, relying on the formalities of the Probate Code, which were designed to *capture* the intent of testators, not to frustrate it.

{40} I recognize that the Revocation of Missing Will(s) document is not an ideal will, and indeed that Decedent apparently believed that it did not constitute a will under New Mexico law. Decedent used language suggesting that he did not consider the document a will and that he intended to revoke his prior will by the ineffective means of performing a revocatory act on a partial photocopy of his prior will. Because of this confusion, the majority concludes as a matter of law that Decedent's document was not a will, and as such failed to satisfy New Mexico's statutory requirements for the revocation of a prior will. I respectfully disagree. The document met all of the formalities necessary to create a will, and the district court's responsibility was simply to determine the testator's intent. *In re Estate of Deupree*, 2002–NMCA–097, ¶ 10, 132 N.M. 701, 54 P.3d 542 ("In construing the provisions of wills and trust instruments, 'the court must attempt to ascertain and give effect to the testator's intent.'" (quoting *In re Estate of Russell*, 119 N.M. 43, 45, 888 P.2d 489, 491 (Ct.App.1994))). Given the document's ambiguity, we should remand to the district court to determine, on the basis of extrinsic evidence of the testator's intent, whether the Revocation of Missing Will(s) document should be considered a will for the purposes of NMSA 1978, Section 45–2–

507(A)(1) (1993) (providing that a prior will can be revoked "by executing a subsequent will that revokes the previous will or part expressly or by inconsistency"). Only if the document is found not to be a will would I raise the issue of constructive trust. Accordingly, I respectfully dissent.

{41} I agree that the Probate Code's formalities must be punctiliously observed, even when at times this may undermine the decedent's intent. *See, e.g., In re Estate of Martinez*, 1999–NMCA–093, ¶ 9, 127 N.M. 650, 985 P.2d 1230 (implying that even if the proper formalities were observed, a document purporting to do nothing more than revoke a prior will would not be effective to do so). For this reason, I agree with the majority's holding that a revocatory act on a partial photocopy is insufficient to revoke the prior will. Under the New Mexico Probate Code, revocation may be achieved only in the two methods provided under the Code. *Perschbacher v. Moseley*, 75 N.M. 252, 256, 403 P.2d 693, 695 (1965) (decided under former law) (holding that without following the Code's explicit provisions, "mere intention alone, no matter how unequivocal, is not sufficient to effect the revocation of such a solemn instrument."). The first method is by a subsequent testamentary instrument, where "testamentary" is defined as taking effect upon the testator's death. Section 45–2–507(A)(1); *In re Estate of Martinez*, 1999–NMCA–093, ¶ 11, 127 N.M. 650, 985 P.2d 1230 (holding that a document purporting to do nothing more than revoke a prior will was ineffective to do so, since it took effect immediately and was therefore not testamentary in nature). The second, as the majority thoroughly explains, is by a revocatory act on the original will or an executed duplicate. Section 45–2–507(A)(2). While the second prong of the revocation statute has not been met, it is not clear to me that the first prong-revocation by subsequent will—has not been satisfied.

{42} Had Decedent executed, in accordance with the statutory formalities, a document purporting to be a will requesting that his property be disposed of through the intestacy laws, but specifying that nothing from his estate would be given to certain

relatives, I see no reason why our courts should refuse to give effect to his desires. *See* NMSA 1978, § 45–1–201(A)(53) (1993) (" 'will' includes codicil and any testamentary instrument that merely ... expressly excludes or limits the right of an individual or class to succeed to property of the decedent passing by intestate succession."); NMSA 1978, § 45–2–101(B) (1993) ("A decedent by will may expressly exclude or limit the right of an individual or class to succeed to property of the decedent passing by intestate succession."). *See also Unif. Probate Code* art. II, pt. 1, general cmt., 8 U.L.A. 79 (1990) (explaining that the provision now adopted in New Mexico as Section 45–2–101(B) provides that "[s]o-called negative wills are authorized, under which the decedent who dies intestate, in whole or in part, can by will disinherit a particular heir."); *Unif. Probate Code* § 2–101, cmt., 8 U.L.A. 80 (1990) ("A clear case would be one in which the decedent's will expressly states that an individual is to receive none of the decedent's estate. Examples would be testamentary language such as 'my brother, Hector, is not to receive any of my property' or 'Brother Hector is disinherited.' "). In other words, such a document would be a valid will. Furthermore, if Decedent executed such a subsequent will, it seems clear that the New Mexico Probate Code would obligate us to conclude that the previous will had been revoked, *even if* the new will did not explicitly recite language revoking the previous will. Section 45–2–507(C) ("The testator is presumed to have intended a subsequent will to replace rather than supplement a previous will if the subsequent will makes a complete disposition of the testator's estate."); *Albuquerque National Bank v. Johnson,* 74 N.M. 69, 72, 390 P.2d 657, 659 (1964) (decided under former law)

(holding that an implied revocation may be worked "either by express language, or by implication by a later testamentary instrument disposing of the property in a manner inconsistent with its disposition by the former will." (citations omitted)). Unfortunately, our decision is not so simple, since the disputed Revocation of Missing Will(s) document contains additional language suggesting that Decedent did not perceive it to be a will.

{43} Because of this additional language, the majority has concluded that the Revocation of Missing Will(s) document "was not a subsequent will *in Decedent's mind.*" (Emphasis added.) I agree with the majority that this language supports such an inference. However, since Decedent is unavailable to explain his understanding of what constitutes a "will," I find it impossible to conclude as a matter of law that his understanding coincides with the definition of "will" under the New Mexico Probate Code. Although it may appear to be a stretch to ask whether both Decedent and New Mexico law intended the same interpretation of "will," there is evidence on the face of the Revocation of Missing Will(s) document that Decedent's understanding was imperfect. Specifically, Decedent sought to use this document to distribute his property after his death outside of New Mexico's exact intestacy scheme, even if only by a few details. We are not in a position to determine the importance of these details to Decedent. In New Mexico, this goal can *only* be achieved with a will. Section 45–2–101(A) ("Any part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs"). Can we be so confident, then, that Decedent did not intend to create what our law recognizes as a will? [2] I prefer

---

**2.** Consider the following analogous situation that could arise under our probate law: The testator wrote and properly executed a will giving his real property to A and the residuum of the estate to B. Later, the testator executed a codicil providing that A was to receive nothing and that C was to receive the real property. Concerned that there might be some confusion over what was supposed to happen to the residuum, which he still intended to go to B under the original will, testator entitled the codicil "Codicil–Not a Will!"

Under New Mexico law, as the majority and I agree, *revocation can only* be achieved by subse-

quent will or revocatory act. *See Albuquerque National Bank,* 74 N.M. 69, 72–73, 390 P.2d 657, 659–60 (1964) (decided under former law) (applying statutory revocation requirements to the question of whether a codicil could have revoked part or all of a prior will). There was no revocatory act in this scenario, so the question becomes whether the codicil could be considered a will under New Mexico statute. There is no doubt that except for the "Not a Will!" language, the revocation would be effective, since under Section 45–1–201(A)(53), a codicil *is* a "will." Would we really come to the contrary conclu-

to simply acknowledge that the Revocation of Missing Will(s) document is ambiguous in this respect.

{44} In the context of such uncertainty, our case law reasonably counsels us to give way to the fact-finder in determining the nature of the disputed document. In our limited capacity as an appellate court, we should not be in the position of divining Decedent's intent from his conflicting statements. Generally speaking, when a document is not ambiguous, questions of testamentary intent are decided by the trial judge as a matter of law. *In re Estate of Kerouac,* 1998–NMCA–159, ¶ 10, 126 N.M. 24, 966 P.2d 191. In the vast majority of cases, it poses no problem for a trial judge to make this determination; I have no quarrel with a trial judge who refuses to probate a document that gives no indication that it disposes of property upon death. However, when clear intent cannot be discerned from a document's face, extrinsic evidence must be admitted. *In re Estate of Kelly,* 99 N.M. 482, 660 P.2d 124 (Ct.App.1983). In *Kelly,* the Court of Appeals examined a document granting property to a decedent's family and friends that failed to indicate "whether decedent intended the property referred to therein to pass immediately or only in the event of his death." *Id.* at 488, 660 P.2d at 130. As such, the issue was whether the trial court had properly granted summary judgment to the will's opponents. The Court of Appeals held that summary judgment had been improperly granted because "[w]here a doubt exists as to whether an instrument was intended to be a will, the issue of testamentary intent is generally a question of fact for the trier of fact." *Id.* at 489, 660 P.2d at 131; *see also In re Estate of Martinez,* 99 N.M. 809, 813, 664 P.2d 1007, 1011 (Ct.App.1983) (holding that there was substantial evidence to support the trial court's findings, based on the witnesses' testimony, that a document challenged as lacking testamentary intent was a will). In addition, the *Kelly* Court stressed that for a will to be valid, "it is not essential that the document expressly recite that the instrument shall take effect only at the death of

sion, as the majority seems to have done in this case, just because of the testator's confusion over

the testator, if the instrument and circumstances under which it was written reasonably indicate that the document was intended to be testamentary in character." *Kelly,* 99 N.M. at 489, 660 P.2d at 131; *see also In re Estate of Kimble,* 117 N.M. 258, 261, 871 P.2d 22, 25 (Ct.App.1994) (testamentary intent "does not depend upon the testator's understanding of the legal effect of the document").

{45} Although *Kelly* can be distinguished from the case at bar insofar as the document in *Kelly* did not involve any language directly suggesting that it was not a will, its essential holding applies. Where there is ambiguity involving the existence of testamentary intent-or, as the Court of Appeals put it, over the "testamentary character" of the document-summary judgment is not appropriate.

{46} I would reverse the district court because it should not have decided the issue of the will's testamentary nature as a matter of law. The document appears to satisfy the statutory requirements for a will. The real issue is Decedent's intent, which the evidence strongly suggests was to dispose of his property and revoke the prior will. Due to the ambiguity of the Revocation of Missing Will(s) document, there still exists a genuine issue of material fact on this subject.

{47} I recognize the majority's concern that the issue I find compelling in this case was not preserved. However, because the district court specifically addressed the issue, as did the Court of Appeals and Wife in her brief to this Court, I conclude that the argument was preserved. Under Rule 12–216(A) NMRA, with the exception of issues of public interest or fundamental error, "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required, nor is it necessary to file a motion for a new trial to preserve questions for review." In the case at bar, there is no argument that either of the exceptions applies, so the Court should only consider whether the normal preservation require-

our statutory definition of "will"?

ments have been satisfied. *State v. Joanna V.*, 2003–NMCA–100, ¶ 10, 134 N.M. 232, 75 P.3d 832, *aff'd*, 2004–NMSC–024, 136 N.M. 40, 94 P.3d 783. The Court of Appeals has explained that the preservation rule serves the purposes of (1) allowing the trial court an opportunity to correct any errors, thereby avoiding the need for appeal, and (2) creating a record from which the appellate court can make informed decisions. *Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 38, 125 N.M. 748, 965 P.2d 332. Preservation requirements assure that parties "alert the mind of the trial judge to the claimed error." *Madrid v. Roybal*, 112 N.M. 354, 356, 815 P.2d 650, 652 (Ct.App.1991).

{48} In this case, it is unclear whether Wife raised Section 45–2–507(A)(1)'s applicability or failed to do so in district court. Moreover, in its order granting summary judgment, the district court stated that "[n]either party proposes the revocation document satisfies the requirements of § 45–2–507A(1)." Nevertheless, the court went on to conclude that "[t]he purported revocatory document dated February 28, 2001, does not satisfy the requirements of § 45–2–507A(1)"

because it "is not testamentary in character, in that it purports to act instanter and not upon the death of George Gushwa." Similarly, Wife does not seem to have raised the issue of Section 45–2–507(A)(1) in her briefs before the Court of Appeals, but that Court quite clearly considered it in reaching its decision. *In re Estate of Gushwa*, 2007–NMCA–121, ¶ 12–16, 142 N.M. 575, 168 P.3d 147. In her briefs before this Court, Wife has clearly argued the issue. Since both the district court and the Court of Appeals considered and ruled on this issue, and since it has been briefed before this Court, the policies behind the preservation requirement are not offended by this Court's review of the issue.

{49} For the foregoing reasons, I respectfully dissent.