MOORE, Judge.
 

 A.J. Brown appeals from a summary judgment entered by the DeKalb Circuit Court in favor of Emily Brown in a will contest. We affirm.
 

 Facts and Procedural History
 

 On October 17, 2007, Emily filed in the DeKalb Probate Court a petition to pro
 
 *2
 
 bate a will that had been executed in 1957 by her deceased husband, R.B. Brown (“the decedent”). That will (“the 1957 will”) provided that Emily would serve as the personal representative of the decedent’s estate and that she would be the sole beneficiary of the estate. On October 24, 2007, A.J., one of four children born to Emily and the decedent, filed a contest of the 1957 will in the probate court. On October 27, 2007, A.J. filed in the DeKalb Circuit Court a petition to remove the proceedings from the probate court to the circuit court, and, on November 1, 2007, the circuit court entered an order removing the case. On February 6, 2008, A.J. filed an amended contest of the 1957 will. On February 22, 2008, Emily filed a response to the initial will contest.
 

 On February 27, 2008, Emily filed a motion for a summary judgment; on March 4, 2008, she filed a response to the amended will contest. On April 4, 2008, A.J. filed a response in opposition to Emily’s summary-judgment motion. On May 5, 2008, the circuit court heard oral argument regarding whether the 1957 will had been revoked by a “Revocation of Last Will and Testament” that had been executed by the decedent on August 8, 2006 (“the revocation document”), which had been proffered by A. J. in support of his amended will contest. The revocation document stated:
 

 “I, R.B. Brown, residing in DeKalb County, Alabama, being of sound mind and disposing memory and over the age of nineteen years, and with the knowledge and uncertainty of life, do hereby revoke all last wills and testaments heretofore made by me; it being my intention and desire to die without a will.”
 

 On May 9, 2008, A.J. filed in the circuit court a petition to probate the revocation document. Emily moved to strike that petition.
 

 On May 23, 2008, the circuit court entered a summary judgment holding, among other things, that Emily was entitled to have the 1957 will admitted to probate, that the revocation document did not revoke the 1957 will, and that A.J. was not entitled to have the revocation document admitted to probate. The circuit court ordered the probate court to admit the 1957 will to probate; the probate court entered an order admitting the 1957 will to probate on May 27, 2008. On June 4, 2008, A.J. filed a motion to alter, amend, or vacate the summary judgment; that motion was not ruled upon by the circuit court and, thus, was deemed denied by operation of law on September 2, 2008.
 
 See
 
 Rule 59.1, Ala. R. Civ. P. On October 7, 2008, A.J. filed his notice of appeal to this court. This court transferred the appeal to the Alabama Supreme Court for lack of subject-matter jurisdiction; that court subsequently transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7.
 

 On March 5, 2009, this court, after having called for letter briefs from the parties on the issue whether the circuit court’s summary judgment was a final judgment, remanded this case for 28 days for the circuit court to consider whether to certify the summary judgment as final in compliance with Rule 54(b), Ala. R. Civ. P. On March 11, 2009, the circuit court entered an order certifying the May 23, 2008, summary judgment as final, pursuant to Rule 54(b).
 

 Discussion
 

 I. March 5, 2009, Remand Order
 

 We initially acknowledge,
 
 ex mero mot%
 
 that this court’s March 5, 2009, remand order was improper. Alabama Code 1975, § 12-22-21(1), provides for an appeal
 
 *3
 
 from a probate court’s nonfinal order “on a contest as to the validity of a will, to be taken within 42 days after the determination of the contest.” Although § 12-22-21(1) “does not specifically provide a right to appeal from a similar order of the
 
 circuit
 
 court[, the Alabama Supreme Court] has traditionally treated such orders of the circuit court as though they were orders of the probate court.”
 
 Tate v. Kennedy,
 
 578 So.2d 1079, 1080 n. 2 (Ala.1991). Accordingly, because this appeal challenges the circuit court’s “order on a contest as to the validity of a will,” § 12-22-21(1), we conclude that A.J. had the right to appeal from the May 23, 2008, summary judgment to the extent the summary judgment relates to the will contest.
 
 See Tate, supra.
 
 Thus, the circuit court’s subsequent order on remand was unnecessary to confer jurisdiction upon this court.
 

 II. Motion to Dismiss
 

 We next address Emily’s motion to dismiss this appeal, which she filed within her appellate brief to this court. Emily first argues that A.J. should have appealed from the probate court’s May 27, 2008, order admitting the 1957 will to probate. As we noted in section I above, however, A.J.’s appeal from the circuit court’s May 23, 2008, summary judgment was proper under § 12-22-21(1). Furthermore, A.J. argues in response that the probate court’s May 27, 2008, order admitting the 1957 will to probate is void for lack of subject-matter jurisdiction and, thus, will not support an appeal. We agree. Once the administration of an estate is removed to the circuit court, “ ‘that court’s jurisdiction becomes exclusive, and it must proceed to a final and complete settlement, following its own practice and governed by its own procedure.’ ”
 
 Ex parte Farley,
 
 981 So.2d 392, 396 (Ala.2007) (quoting
 
 McKeithen v. Rich,
 
 204 Ala. 588, 589, 86 So. 377, 378 (1920)). Although a circuit court may subsequently retransfer the administration of the estate back to the probate court upon motion of the opponent of the transfer,
 
 Ex parte McLendon,
 
 824 So.2d 700, 704 (Ala.2001), there is nothing in the record indicating that the circuit court did so in the present case. In fact, in its March 11, 2009, order on remand, the circuit court indicated that the administration of the estate of the decedent “remains pending before this Court.” Accordingly, we conclude that the probate court’s May 27, 2008, order is void for lack of subject-matter jurisdiction.
 

 Emily also argues that A.J. failed to name her in her capacity as “executrix” of the decedent’s estate in his notice of appeal. We note, however, that, at the time of the entry of the May 23, 2008, summary judgment, Emily had not been appointed as personal representative of the decedent’s estate. Thus, we find no merit to this argument.
 

 Emily’s final argument in support of her motion to dismiss is that the record does not contain A.J.’s initial pleading in the will contest. We note, however, that, subsequent to the filing of Emily’s brief to this court, A.J. moved the circuit court to supplement the record; the circuit court granted that motion. The supplemental record includes the initial pleading filed in the will contest. Because Emily did not challenge the circuit court’s order supplementing the record in this court, we conclude that Emily’s argument on this point is moot.
 

 III. Appeal
 

 Finally, we address the merits of A.J.’s appeal from the circuit court’s summary judgment. A.J.’s sole argument is that the circuit court erred in determining, as a matter of law, that the revocation document did not revoke the 1957 will.
 

 
 *4
 
 “The standard of review applicable to a summary judgment is the same as the standard for granting the motion.”
 
 McClendon v. Mountain Top Indoor Flea Market, Inc.,
 
 601 So.2d 957, 958 (Ala.1992).
 

 “A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmov-ing party must present ‘substantial evidence’ creating a genuine issue of material fact — ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ Ala.Code 1975, 12-21-12;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).”
 

 Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,
 
 639 So.2d 1349, 1350 (Ala. 1994).
 

 Alabama Code 1975, § 43-8-136, sets forth the two methods by which a testator may revoke a will:
 

 “(a) A will or any part thereof is revoked by a subsequent will which revokes the prior will or part expressly or by inconsistency.
 

 “(b) A will is revoked by being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence by his consent and direction. If the physical act is by someone other than the testator, consent and direction of the testator must be proved by at least two witnesses.”
 

 Alabama Code 1975, § 43-8-1(34), provides that the term “will” “[i]ncludes codicil and
 
 any testamentary instrument
 
 which merely appoints an executor or revokes or revises another will.” (Emphasis added.)
 

 We note that, before 1983, Alabama law provided that a will could be revoked “by burning, tearing, cancelling or obliterating the same, with the intention of revoking it, by the testator himself, or by some person in his presence, and by his direction, or by some other will in writing,
 
 or some other writing
 
 subscribed by the testator, and attested ....” Ala.Code 1975, § 43-1-33 (emphasis added) (repealed by Ala. Acts 1982, Act No. 82-399, effective January 1, 1983). Although some states still include the “some other writing” language in their revocation statutes, the language “some other writing” was omitted from Alabama’s law effective January 1, 1983, when the Probate Code was enacted.
 
 Compare
 
 Ala. Code 1975, § 43-8-136,
 
 with
 
 Fla. Stat. § 732.505(2) (2002) and Ind.Code § 29-1-5-6 (1994 Supp.).
 

 Despite this omission, A.J. argues that the revocation document was a testamentary instrument and, thus, that it should be considered a “subsequent will” under Ala.Code 1975, § 43-8-136(a). Emily, on the other hand, argues that the revocation document cannot be considered a subsequent will under § 43-8-136(a) because, she says, the revocation document took effect immediately, whereas a testamentary instrument would become effective only upon the testator’s death.
 

 Although we can find no Alabama case directly on point, we note that the circuit court relied heavily on a New Mexico case,
 
 *5
 

 Gushwa v. Hunt,
 
 145 N.M. 286, 197 P.3d 1 (2008), which discussed facts analogous to those in the present case. This court, like the circuit court, finds the analysis in
 
 Gushwa
 
 to be persuasive. In
 
 Gushwa,
 
 the New Mexico Supreme Court reasoned:
 

 “At the outset, we note that our Probate Code, unlike that of other states, does not allow for revocation of a will by any ‘other writing.’
 
 Compare
 
 [N.M. Stat.] § 45-2-507(A)(l) [ (1993) ] (‘A will or any part thereof is revoked ... by executing a subsequent will that revokes the previous will or part expressly or by inconsistency ....’)
 
 with
 
 Fla. Stat. § 732.505(2) (2002) (‘A will or codicil, or any part of either, is revoked ... [b]y a subsequent will, codicil, or
 
 other writing
 
 executed with the same formalities required for the execution of wills declaring the revocation.’ (Emphasis added.)). As our Court of Appeals has previously explained:
 

 “ ‘Generally, the question whether a will can be revoked by a writing not testamentary in character depends upon the provisions of the governing statute.... [W]here the statute omits the clause “some other writing” or its equivalent, and simply states that no will shall be revoked except by some other “will, testament or codicil in writing, declaring the same,” it has been held that a will may not be revoked by a writing not testamentary in character.’
 

 “[In re Estate of] Martinez,
 
 ... 127 N.M. 650, [652,] 985 P.2d 1230[, 1232 (Ct.App.1999) ] (quoting E.T. Tsai, Annotation,
 
 Revocation of Will By Nontestamentary Writing,
 
 22 A.L.R.3d § 2(a), at 1351 (1968)).
 

 “Wife argues that the Revocation of Missing Will(s) document should be given the effect of a subsequent will because of its language expressly revoking Decedent’s prior will. Wife relies on the definition of ‘will’ contained in the definitions section of the Probate Code.
 
 See
 
 [N.M. Stat.] § 45-1-201(A)(53) (1995) (defining a will as ‘any testamentary instrument that ... revokes or revises another will’).
 

 “Wife’s position, however, is at odds with the Code’s specific language describing the only legally effective methods of revocation. If a will could be revoked by any writing that simply revoked another will, without the necessary testamentary language — or that it be in fact a ‘subsequent will’ — then a will could be revoked by ‘any other writing,’ contrary to the Code’s specific language and the legislative intent to limit the available means of revocation. Because our Probate Code requires revocation by a subsequent will, we are guided by this more specific statement rather than a generic definition. Accordingly, we reject Wife’s argument that the Revocation of Missing Will(s) document satisfies the requirements of Section 45-2-507(A)(1). It clearly does not, regardless of Decedent’s intent. Our Probate Code requires an exacting attention to form as well as intent to validate a revocation.
 
 See Martinez,
 
 ... 127 N.M. 650, 985 P.2d 1230.
 

 “Similarly, Wife’s argument that other language in the Revocation of Missing Will(s) document gives it the effect of a subsequent will does not persuade us. Instead, the language chosen by Decedent clearly shows that he knew he was not drafting a subsequent will.
 

 “First, in the Revocation of Missing Will(s) document, Decedent explained in writing his correct understanding of the two methods by which a testator can revoke a will — drafting a subsequent will or performing a revocatory act on the will. Decedent then listed acceptable
 
 *6
 
 revocatory acts, including burning or canceling. After establishing that he knew how to revoke a will, and what acts constitute a revocatory act on a will, Decedent then ‘attested] that [he] canceled the first three (3) pages of the will executed ... on or about June 6, 2000, with the express intent to revoke the same.’ Thus, it is clear from the Revocation of Missing Will(s) document that if Decedent intended to revoke the Will, it was not by drafting a subsequent will, but by performing a revocatory act on the photocopy of the Will.
 

 “Additionally, Decedent used conditional language in the Revocation of Missing Will(s) document which strongly suggests that he did not intend the Revocation document to act as a subsequent will. Decedent wrote that he retained the option of drafting a subsequent will. Decedent stated that he knew that his property would pass through intestate succession
 
 ‘if
 
 [he did] not make a subsequent will.’ (Emphasis added.) In other words, the Revocation of Missing Will(s) document, though an expression of intent, was not a subsequent will in Decedent’s mind. In addition, while Decedent excluded [the parties contesting the will] from inheriting any of his property, he explained that they were not to inherit ‘whether by will or by intestate succession,’ leaving open the possibility of a subsequent will.
 

 “Our review of the statutory requirements for revocation by a subsequent will, along with our analysis of the language the Decedent selected for use in the Revocation of Missing Will(s) document, persuades us that the Revocation of Missing Will(s) document was never intended to be a subsequent will and should not be given the effect of a subsequent will by this Court. Therefore, as a matter of law consistent with the clear language of the Probate Code, this document did not revoke Decedent’s prior will.”
 

 145 N.M. at 288-90,197 P.3d at 3-5.
 

 Similarly, in the present case, the revocation document, on its face, clearly indicates that it is not a “subsequent will” because it states: “it being my intention and desire to die without a will.” Furthermore, a “will” is defined in § 43-8-1(34) as a “testamentary instrument.” The word “testament” means “an act by which a person determines the disposition of his or her property after death.”
 
 Merriam-Webster’s Collegiate Dictionary
 
 1291 (11th ed. 2003). By its terms, the revocation document was intended to take effect immediately, not upon the death of the decedent. Moreover, the revocation document did not determine the disposition of the decedent’s property after his death. Because the revocation document is not a “subsequent will,” we conclude that that document did not meet the statutory requirements to revoke the 1957 will.
 

 Conclusion
 

 Based on the foregoing, we affirm the trial court’s summary judgment on the will contest.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.